Donahue, Appellant, *v.* Zoning Board of Adjustment.

Argued April 30, 1963. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

reargument refused November 7, 1963.

*William J. Woolston,* for appellants.

*John G. Kaufman,* with him *Elmer L. Menges,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, October 10, 1963 :

This appeal challenges the validity of zoning ordinances 151 and 155 of Whitemarsh Township, Montgomery County. The court of common pleas sustained both enactments.[1]

Ordinance 151, enacted January 25, 1962, amended the townships' general zoning ordinance to authorize, for the first time, a residential "Apartment House District." This ordinance set forth specific criteria to be met by apartment house construction in an area rezoned to the new classification. However, no specific area on the zoning map was designated "Apartment House District." On March 8, 1962, less than six weeks later, the township supervisors amended the general zoning ordinance and the zoning map so as to rezone from "A Residential" to "Apartment House District" a strip of land on Ridge Pike, east of Spring Mill Road.

Appellants, neighboring land owners, appealed to the zoning board of adjustment from the issuance of a building permit for construction of apartment houses in the newly rezoned district. The board concluded that it had no authority to pass upon the validity of the two ordinances and affirmed the issuance of the permit. This appeal arises from the affirmance by the court of common pleas of the board's action.

---

[1] The court below properly held that Section 20 of ordinance 151 was invalid and severable from the valid portions of that ordinance.

Appellants challenge the validity of zoning ordinances 151 and 155, and seek support from various aspects of the decision of this Court in *Eves v. Zoning Board of Adjustment*, 401 Pa. 211, 164 A. 2d 7 (1960). In that case, we held municipal zoning ordinances invalid because they had not been enacted in accordance with a comprehensive plan, as required by §2003 of The Second Class Township Code,[2] and because they delegated to the township supervisors duties which were not given them by the enabling legislation. The ordinances in *Eves* created a new zoning classification, "F-1 Limited Industrial", but did not delineate the districts so classified. Instead, a step by step procedure was outlined by which owners of land within the township could obtain "F-1" classification for their particular properties. It was this case by case review which demonstrated the absence of a comprehensive plan and which sought to enable the board of supervisors to exercise powers they did not statutorily possess.

In the instant case, the new classification was established and the zoning map amended within a very short period of time. Under the rules of statutory construction which are likewise applicable to ordinances, see *Cloverleaf Trailer Sales Co. v. Pleasant Hills Borough*, 366 Pa. 116, 76 A. 2d 872 (1950); *Philadelphia v. Phillips*, 179 Pa. Superior Ct. 87, 116 A. 2d 243 (1955); these ordinances should be read together as one enactment. See Statutory Construction Act, May 28, 1937, P. L. 1019, §62, 46 P.S. §562. So construed, ordinances 151 and 155 do not create the "floating zone", anchored only upon case by case application by landowners, which we struck down in *Eves*. While it is true that the change here was made upon request

---

[2] Act of May 1, 1933, P. L. 103, §2003, added July 10, 1947, P. L. 1481, §47, 53 P.S. §67003.

of a particular landowner, this does not necessarily create the evils held invalid in *Eves* where the defects were specifically created by the very terms of the ordinances. It is not unusual for a zoning change to be made on request of a landowner, and such change is not invalid if made in accordance with a comprehensive plan. We are unable to conclude, as appellants contend, that an unlawful floating zone was here created.

Appellants further contend that the ordinances in question were not passed in accordance with a comprehensive plan as required by The Second Class Township Code[3] and by the township's general zoning ordinance. In *Key Realty Co. Zoning Case*, 408 Pa. 98, 100-01, 182 A. 2d 187, 189 (1962), in passing upon a question arising under the similar requirement of The Borough Code,[4] we said: "Selection of individual properties or groups of properties for rezoning, even if authorized by an ordinance, is not in compliance with the statutory mandate that zoning regulations must be 'in accordance with a comprehensive plan.' To fulfill this requirement, zoning legislation must reflect and implement the totality of a municipality's program of land utilization, considering both the land resources available and the needs and desires of the community. *This does not contemplate a rigid 'master-plan' which attempts to answer in minute detail every last question regarding land utilization;* whether that plan be formulated by a planning commission or by the zoning ordinance itself. Nor, on the other hand, should it be, as in Eves, loose legislation permissive of ad hoc determinations of the land utilization of comparatively small sections of the community." (Emphasis added.)

---

[3] See note 2 supra.

[4] Act of May 4, 1927, P. L. 519, §3303, added 1947, July 10, P. L. 1621, §93, 53 P.S. §48303.

Indeed, in the *Eves* case, after expressly avoiding definition of "comprehensive plan", this Court said at page 216, A. 2d at 10: "For present purposes, it is only important to point out that the focus of any plan is land use, and the considerations in the formulation of a plan for the orderly development of a community must be made with regard thereto. This positive focus is thrust upon the township supervisors by the enabling legislation itself . . . And since any zoning ordinance must be enacted in accordance with the comprehensive plan, the plan itself, embodying resolutions of land use and restrictions, must have been at the point of enactment a final formulation."

The declaration of intent which introduces ordinance 151, quoted in the margin,[5] clearly indicates that it and ordinance 155 were enacted "in accordance with a comprehensive plan."

Appellants argue that mere compliance with the statutory requirements is, in this instance, insufficient, since the township's general zoning ordinance specifically defines "comprehensive plan". They assert that a separate document or report outlining future goals in the nature of a master plan is required by the ordinance, and such a document does not exist. However,

---

[5] "The purpose of establishing planned apartment districts shall be to encourage the logical and timely development of land for apartment purposes in accordance with the objectives, policies, and proposals of the (Comprehensive or General) Plan for the community; to permit a variety of housing to the landscape which conforms to the interest of the (Comprehensive or General) plan and zoning ordinance; to assure the suitable design of the apartment in order to protect the surrounding environment of adjacent and nearby neighborhoods; and to ensure that the proposed development will constitute a residential environment of sustained desirability and stability and not produce a volume of traffic in excess of the capacity for which access streets are designed. The protective standards contained in this Article are intended to minimize any adverse effect of the apartment on nearby property values."

reference to the declaration of intent in ordinance 151 reveals that the supervisors intended no such requirement of a rigid master plan. The supervisors draw a distinction between "comprehensive" and "general" (or master) plans, as does this Court. See *Key Realty Co. Zoning Case,* supra.

The court below, in examining prior zoning enactments in Whitemarsh Township, observed, ". . . Section 1302 of the Zoning Ordinance of 1957 [not here involved] provides that in Shopping Center Districts 'the development shall be consistent with the comprehensive plan upon which this Ordinance is based. . . .' . . . Obviously the comprehensive plan referred to in Section 1302 is one and the same as the plan embodied in the Ordinance of 1957, no other plan being shown to exist." Thus, it is clear that the supervisors do not equate the comprehensive plan with a master plan. And surely, appellants cannot contend that once formulated, a comprehensive plan may not be amended or changed.

Therefore, it is our conclusion that the enactment of ordinances 151 and 155 was in accordance with a comprehensive plan as required by The Second Class Township Code and by the general zoning ordinance.

It is also argued that ordinance 155 is invalid because the applicant for the zoning change effected by that ordinance failed to comply with procedural requirements of the general zoning ordinance and of ordinance 151. This contention, too, is devoid of merit. Ordinarily, when an area is to be rezoned to a lower use classification, the general zoning ordinance requires that an applicant for the change submit a time schedule for construction and a detailed site plan. Appellants urge that these documents are required in order to inform the supervisors and the public when and how the land would be developed. However, ordinance 151, by its own provisions, has made

such submissions unnecessary. Section 6 of that ordinance requires that construction be substantially undertaken within 18 months and imposes other time limitations. Further, ordinance 151 sets forth detailed requirements and specifications for construction with which the builder must comply. The supervisors apparently considered compliance with these requirements sufficient notice of the nature of the proposed development. Their determination in this respect should not be disturbed. Ordinance 151 imposes no additional specific procedural requirements which must be followed at the time of application for zoning change. Particular problems of detailed planning and construction would normally be resolved upon application for building permit.

We find no basis for disturbing the decision of the court below.

Order affirmed.