## John P. Marino *v.* Zoning Hearing Board of Harrison Township.

Argued October 20, 1970, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and BARBIERI.

*Robert L. Frantz,* with him *George L. Cass,* and *Buchanan, Ingersoll, Rodewald, Kyle* and *Buerger,* for appellant.

*David McNeil Olds,* with him, *Eric P. Reif, Reed, Smith, Shaw* and *McClay,* and *W. Louis Coppersmith* and *Margolis* and *Coppersmith,* for appellee.

OPINION BY JUDGE KRAMER, filed January 22, 1971.

This is an appeal from an Order of the Common Pleas Court of Allegheny County, approving the issuance of a building permit pursuant to two zoning ordinances establishing a Shopping Center District use classification.

The building permit was applied for by "Gee Bee Department and Furniture Store" owned by Glosser Bros., Inc., which had agreed to purchase certain realty in Harrison Township owned by News Printing Co.,* upon the condition that the zoning classification of the realty (forming the subject matter of this case) would permit the building of a shopping center.

During the spring of 1968, the owner of this realty and representatives of Glosser Bros., Inc., made a request to the Board of Commissioners of Harrison Township for a rezoning of the realty from "Commercial, Light Industrial and Residential" to a classification permitting the construction of a shopping center by Grosser Bros. Because the Planning Commission and the township's professional planning consultant recommended that request be refused until the township could invoke strict controls over the development and operation of shopping centers in the township, the Board of Commissioners took no action on the initial

---

*The News Printing Company operates a local newspaper called The Valley Daily News. The President and Publisher is Eugene A. Simon, who is mentioned hereinafter.

request and embarked upon a plan to amend the Master Zoning Ordinance to provide for the detailed controls recommended.

On August 15, 1968, the Commissioners enacted Ordinance No. 1337, which in effect amended the Master Zoning Ordinance, thereby creating a new zoning use district known as a "Shopping Center District". Although Ordinance No. 1337 does set forth a detailed list of requirements and conditions for the establishment of a shopping center district, the ordinance does not set forth any specific area of the township for the establishment of such a zoning classification.

Following the enactment of Ordinance No. 1337, the News Printing Company applied for the rezoning of its tract of land to the new "Shopping Center District" classification.

After proper notice and public hearing, the Board of Commissioners on December 19, 1968, adopted Ordinance No. 1348, which in effect rezoned this tract of land to the "Shopping Center District" use classification as provided for in Ordinance No. 1337. On January 2, 1969, the building permit was issued to Glosser Bros. for the construction of the proposed shopping center, which brought about this appeal.

On January 18, 1969, John P. Marino,* the appellant here, filed an appeal to the Zoning Hearing Board of Harrison Township, and a hearing was held on that appeal, after which, on April 22, 1969, the Zoning Hearing Board issued a ruling that the ordinances were valid and that the building permit had been validly issued. On May 2, 1969, the appellant filed his appeal in the Court of Common Pleas of Allegheny County, and after a hearing de novo, at which testimony was

---

* Mr. Marino is a part owner of an existing shopping center about two miles away from the site of the realty here involved, and part of his income is derived from the sales of stores in his shopping center.

taken and evidence introduced, the court on April 15, 1970, issued an order (in effect) affirming the action of the Zoning Hearing Board of Harrison Township.

This appeal was taken to the Supreme Court of Pennsylvania at No. 192, March Term 1970; and under the provisions of The Commonwealth Court Act (Act of January 6, 1970, No. 185), this case was transferred to this Court.

The appellant presents two major issues in his appeal. First, he argues that the enactment of the two ordinances (1337 and 1348) is contrary to the established law of Pennsylvania in that they established floating zones not in accordance with a comprehensive plan. Secondly, he argues that the News Printing Company, (through its publisher, Mr. Simon), owner of the rezoned land tract, exerted such pressure on a number of the various board members and officials of the township as to create a conflict of interest sufficient to render the ordinances invalid. It is alleged that Mr. Simon sought out executive officers of Allegheny-Ludlum Steel Company for the purpose of having them bring pressure to bear upon those of their employees who sat upon certain township boards and committees. This, the appellant argues, tainted the objectivity of the individuals in question—in that they could not be loyal to two masters at the same moment.

With regard to the first issue (the alleged floating zone), we should point out as a general principle that "Zoning is the legislative division of a community into areas in each of which only certain designated uses of land are permitted so that the community may develop in an orderly manner in accordance with a comprehensive plan." *Best v. Zoning Board of Adjustment,* 393 Pa. 106, 110, 141, A. 2d 606, 609 (1958). This principle must be balanced with another principle that one may use his private property in any lawful way he sees fit, provided he does not violate (1) any constitu-

tional or statutory provisions (including zoning ordinances), or (2) the protected rights of other property owners. The premise of this fundamental principle can be traced to the Magna Carta itself in 1215 A. D.

There is no doubt that under *Eves v. Zoning Board of Adjustment*, 401 Pa. 211, 164 A. 2d 7 (1960), "flexible selective zoning" ordinances which rezone on a case-by-case method and which are not enacted in accordance with a comprehensive plan* are invalid. In that case, the Court was confronted with two zoning ordinances, one passed in April of 1958 amending the general zoning ordinance so as to create the "floating zone", and a second ordinance in January of 1959 which amended the zoning map, thus bringing the floating zone to rest. The Pennsylvania Supreme Court held both of these ordinances to be invalid in that the facts represented the "antithesis of zoning in accordance with a comprehensive plan". The Court in *Eves* recognized that no property owner has a vested interest in an existing zoning map, and all are subject to the possibility of rezoning, but the Court found the zoning ordinances in that case to be lacking in providing for notice to the property owner of the true nature of the vicinity in which he owned property and a lack of statutory standards which would amount to a comprehensive plan.

In 1963, the Supreme Court spoke directly to the *Eves* issue in *Donahue v. Zoning Board of Adjustment*, 412 Pa. 332, 194 A. 2d 610 (1963), a case with strikingly similar facts to this case. There, in January, 1962, the township amended its zoning ordinance there-

---

* A comprehensive plan for townships such as Harrison is covered by statute, Act of July 31, 1968, P. L.    , §301 (53 P.S. 10301) ; but the statute does not set forth any exact description of such a plan. A comprehensive plan may include many different unlimited basic elements in addition to those mentioned in the statute.

by creating an apartment house district, without specific areas designated, and in March of that same year amended the general zoning map so as to rezone a particular piece of realty, thus bringing the so-called "floating zone" to rest. The court chose to distinguish *Donahue* from *Eves* in that in *Donahue* the establishment of the classification and the actual amendment of the zoning map occurred within a short period of time (six weeks). Relying upon the rules of statutory construction, the court read the two ordinances together, thereby holding that a "floating zone" had never existed. Since the amendments creating the zone and its anchoring were read together, the ad hoc evils of *Eves* were thus avoided. The Court found that the two ordinances were in accord with a comprehensive plan for the municipality.

In *Key Realty Co. Zoning Case*, 408 Pa. 98, 182 A. 2d 187, (1962), and *Furniss v. Lower Merion Township*, 412 Pa. 404, 194 A. 2d 926 (1963), the Pennsylvania Supreme Court addressed itself to the substance of a comprehensive plan. In both cases the court took pains to indicate that such plans are neither absolute nor inviolate. They neither "contemplate a rigid master plan" nor should they contemplate a "permissive ad hoc determination of land utilization of comparatively small sections of the community". Read together with *Donahue* these cases indicate that to fulfill the legislative requirement for a comprehensive plan the zoning ordinance should reflect a consideration of the municipality's program of land utilization and the needs and desires of the community.

*Village 2 at New Hope, Inc. Appeals*, 429 Pa. 626 241 A. 2d 81 (1968), is another case similar to the *Eves* and *Donahue* fact situations. There, both the unattached zone situation and the anchoring amendments were enacted on the very same day. The court read the two amendments together and added that "cases

subsequent to *Eves* have made it clear, however, that these plans may be changed by the passage of new zoning ordinances with some demonstration of sensitivity to the community as a whole, and the impact that the new ordinance will have on the community".

In the instant case Ordinance No. 1337 creating a "Shopping Center District" was enacted on August 15, 1968, and on December 16, 1968, Ordinance No. 1348 rezoning the tract in question was enacted. A period of four months elapsed between the passage of 1337 and 1348. All of this legislative activity came about as a result of the request of this land owner for permission to use this land for the purposes set forth in these ordinances; and the ordinances were passed only after a study, determination and recommendation by planners intended to reflect a consideration of the land utilization and the needs of the community. The record is clear that the original request by the owner and developer was deferred until more stringent and detailed requirements could be developed to protect the comprehensive plan of the municipality.

Looking to the capable opinion of the learned Judge LENCHER at 384(a), we concur in his statement that, "Here we find a consideration of changes in all relevant respects of the coming of such public improvements, of such a change in population shifts, of such a significant potential in the building of the state highway that the amendments completely conform to the grant of power in the enabling statute to the same extent as on original ordinances. The ordinances fit the comprehensive plan requirement".

The second major argument made by the appellant concerns conflict of interest, and revolves about the employment of the Township Commissioners by the Allegheny-Ludlum Steel Corporation.

The record indicates that Allegheny-Ludlum owns and operates a large steel plant in Harrison Township

and is its largest taxpayer. It is understandable that many of its employees live in Harrison Township. The appellant offered proof that the editor (Mr. Simon) of the newspaper which owns the tract of land wrote letters to officials of Allegheny-Ludlum Steel Corporation in an obvious attempt to initiate some pressure by Allegheny-Ludlum as employer, on their employee-members of this Township Commission. Marino likewise offered evidence of Simon's editorials which were published by his newspaper, once again showing an obvious attempt to influence the outcome of this zoning matter and the issuance of building permits. We recognize that in many of these cases involving the rezoning of land uses, pressures are brought to bear from many sources.

However, in all of the testimony and evidence which were presented by the appellant, there is nothing indicating that the commissioners were influenced by the pressures that were attempted. There is no evidence that any of the township officials were contacted in any way by anyone from Allegheny-Ludlum. In fact, they specifically denied this.

We do not condone the action of the editor of the Valley Daily News in exerting the kind of pressure he attempted to exert in this case. What we say is that the record does not prove that his actions caused the Commissioners to act improperly.

Public policy demands that our elected and appointed officials comport themselves with extreme propriety and discretion. Great trust is imposed in them, and they are duty-bound to vindicate such trust. One who chooses to impugn and cast a shadow upon such officials has the duty to come forth and adequately carry his burden of proof. Mere innuendo and opinion have no place in satisfying such a burden. In the instant case we find much innuendo and opinion, with

little else in the record, however, to substantiate appellant's allegations.

We fail to find the presence of any type of direct personal or pecuniary gain accruing or possibly accruing to the officials involved. Without such finding, appellant's allegations cannot be supported. See *National Bank & Trust Company of Chester County v. East Whiteland Township*, 27 D. & C. 2d 384 (1962), *Genkinger v. New Castle*, 368 Pa. 547, 84 A. 2d 303 (1951), *Reckner et al. v. German Township School District*, 341 Pa. 375 19 A. 2d 402 (1951).

Favorable attention is drawn to the opinion of Judge LENCHER, at 391a, citing *Weber v. Philadelphia*, 437 Pa. 179 (1970) : "In passing upon the propriety of the actions of municipal officials, judicial restraint rather than judicial intervention should guide the courts. We are not a super municipal body and in the absence of improper motivation, demonstrated of record, which prompted the actions of municipal officials, we should not interfere with such actions."

The appellant submits two other issues which the Court will pass upon. They deserve relatively little consideration because they are patently without merit. The appellant argues that the ordinances should be declared void because their enactment was based upon the premise that the purpose was to increase the tax base. Once again, this argument is founded upon a letter written by Mr. Simon, the editor, to the School Board, and a letter from the School Board to the Planning Commission. There is no evidence that these letters were used as the basis or purpose of the ordinances in question.

Lastly, the appellant argues that Ordinance 1348 is invalid because the proponents of the shopping center did not show a need for another shopping center in the township. The record is clear, and we agree with the court below, that there was adequate evidence pre-

sented to comply with the requirements of both ordinances. We should point out that Ordinance No. 1337 in Section IIA states, "The need for the proposed development has been demonstrated by means of market studies *or such other evidence as the Planning Commission may require*". (Emphasis added.) Under the wording of this section, the Zoning Board of Harrison Township could utilize any of the evidence that was presented to it in making its determination.

In summary, the well-reasoned opinion of the court below is affirmed.