## Nichols v. State College Borough

S. *Paul Mazza* of *Mazza & Mast,* for plaintiffs.

*Robert K. Kistler,* of *Miller, Kistler & Campbell,* for defendant.

CAMPBELL, P. J., August 20, 1971.—In May of 1970, plaintiffs purchased properties known as 728 and 734 West Beaver Avenue. The land has a total frontage of 100 feet, a depth of 150 feet, and has constructed thereon two dwellings, containing a total of three rental units. Plaintiffs intended at the time of purchase to remove the dwellings and construct a multi-family rental unit. By two separate complaints, plaintiffs have attacked three ordinances adopted by the borough which prevent the construction of their intended multi-family dwelling.

Ordinance no. 753 was approved on October 15, 1969, prior to purchase of the property. It requires a minimum lot width of 120 feet for the construction of a multi-family dwelling.

Ordinance no. 769 was adopted September 15, 1970, which reduced the height limitation on five areas in the Borough of State College, including plaintiffs' property, from 65 feet to 35 feet.

On December 8, 1970, ordinance no. 774 rezoned the area containing plaintiffs' property from an "R-4" residential district to an "R-2" residential district, the latter of which reduces the number of residential units which can be built on a given area.

The restricted use limitations placed on plaintiffs' property by the three enumerated ordinances without question greatly reduced the economic value of the property. Plaintiffs challenge the ordinances on the following grounds:

1. The Pennsylvania Municipalities Planning Code of January 1, 1969, P. L. 53 PS §§10101-11202, became effective January 1, 1969. It requires the adoption of a comprehensive plan. Defendant borough has no comprehensive plan and, therefore, the aforementioned ordinances are illegal.

2. Plaintiffs contend that the ordinances are illegal, unconstitutional and void in that they constitute spot zoning and the action of the borough is arbitrary, capricious and unreasonable.

It is agreed that the Borough of State College has not yet adopted a comprehensive plan which complies with all of the specific requirements outlined in section 301 of the Pennsylvania Municipalities Planning Code. The court does find, however, that the borough has a comprehensive and orderly plan of land use which reflects a rational zoning scheme. The first zoning ordinance of the borough dates back to 1938. It was accompanied by a zoning district map and as a result of numerous amendments, additions and developments, a major comprehensive zoning ordinance was adopted in 1959. This, likewise, was accompanied by a com-

prehensive land use map. Prior to January 1, 1969, three major planning studies were conducted upon which various zoning regulations were based. The borough started in March of 1969 to prepare a new comprehensive plan to comply with the requirements of the Pennsylvania Municipalities Planning Code. The preliminary draft was completed in January of 1971 and is ready for public review and hearings.

From a careful review of the testimony, we can find absolutely nothing which would indicate that the borough enacted in bad faith any zoning legislation which would specifically apply to plaintiffs' land. All of the ordinances are applicable to large segments of the borough and we find no motivation or attempt by the borough to specifically injure or limit plaintiffs' property. We further find the ordinances were designed to serve a justifiable purpose and are in accordance with an over-all program and have a reasonable relationship to the health, safety, morals and general welfare of the community. We, therefore, are unable to find any evidence of spot zoning or that the borough's action was arbitrary, capricious or unreasonable.

This leaves for our decision the sole question as to whether or not a borough may adopt or enact a zoning ordinance after January 1, 1969, when it does not have in existence a comprehensive plan as required by section 301 of the code.

The words "comprehensive plan" are not new. Prior to the adoption of the code, it was unnecessary to adopt a separate comprehensive plan before it could enact a valid zoning ordinance. The ordinance itself could serve as the plan: Donahue v. Zoning Board of Adjustment, 412 Pa. 332 (1963). The ordinance, however, had to be in accord with a comprehensive over-all program or plan. Section 601 of the code indicates

that a preexisting comprehensive plan is required, yet numerous other sections clearly assume that a zoning ordinance may be in existence although the community has not yet adopted a part or any of its comprehensive plan. Section 301 of the code definitely requires the adoption of a separate comprehensive plan and section 302 provides procedures for its enactment. There is no deadline for its adoption.

We, therefore, interpret the code to require an orderly growth transition period of reasonable duration at the end of which each municipality shall have tangible documentary evidence of a comprehensive plan. Subsequent thereto, no ordinance may be enacted which is not in conformity therewith or in accordance with the spirit and intent of a formally adopted comprehensive plan. Since the statute placed no deadline for the adoption of a comprehensive plan and it would appear that the municipality has made reasonable progress toward that end, we thus hold that the zoning ordinances in question are not invalidated in their present posture.

We face one further problem. Section 606 of the code provides that every ordinance adopted subsequent to January 1, 1969, shall contain a statement of community development objectives, which may be supplied by reference to the community comprehensive plan or such portions thereof as may exist, or a statement of legislative findings of the governing body which have a bearing on the community comprehensive plan with respect to the factors which the municipality believes relevant in describing the purposes and intent of such ordinance. This, the borough has failed to do. We here hold that the absence of the requirements as set forth in section 606 of the code does not automatically render the ordinances null and void. We do, however, indicate that this failure squarely places on the municipality the burden of proving its relevan-

cy and connection with existing community development objectives and suggest that its failure to do so promptly may be fatal in its enforcement of penalties or sanctions. We will, therefore, allow defendant until January 1, 1972, to comply with the requirements of the statute.

The real purpose of the code was to compel a municipality to attempt real conscientious and intelligent planning instead of enacting a hodgepodge of ordinances which have no rational relationship with each other. The code is saying, do not pass any ordinance without a purpose or objective which is related to and harmonious with a general plan evolved from a detailed study of all interrelated zoning matters.

In line with the above discussion, we issue the following caveats:

1. The borough should proceed with due deliberate speed to: (a) Adopt a separate comprehensive plan as provided by section 301 of the code, and (b) amend or supplement all unrepealed zoning ordinances with a statement of community development objectives as required by the code.

2. Legislative zoning power should not be considered a license to confiscate or needlessly diminish the value of specific property, and the borough should utilize every device to alleviate hardship by variances or special exception where it is possible to do so and still adhere to sound zoning practices. In this instance, we recognize that plaintiffs are partly at fault by purchasing their property without proper investigation.

And now, August 20, 1971, to protect the parties, the record is opened until January 1, 1972, to allow either party to present additional relevant testimony as suggested by this opinion, following which this court will make a final order.