Levitt and Sons, Inc., et al. *v.* Kane, Jr.
Levitt and Sons, Inc., et al. *v.* Kane, Jr., et al.
Daikeler *v.* Kane, Jr.

Argued October 6, 1971, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MANDERINO, MENCER and ROGERS. Judge MAN-
DERINO did not participate in the decision.

*Richard L. Bazelon*, with him *William T. Coleman, Jr.* and *James A. Sutton, Dilworth, Paxson, Kalish, Levy & Coleman*, and *Philip R. Detwiler, Butera and Detwiler*, for appellants, Levitt and Sons, Inc. and Bill Realty Co.

*Jules Pearlstine*, with him *Pearlstine, Salkin, Hardiman, Robinson, Hunn & Meinzer* and *John P. Knox, Stefan, Timoney, Knox & Avrigian*, for appellant, Daikeler.

*William R. Cooper*, with him *Bette J. Walters*, for appellee.

OPINION BY JUDGE ROGERS, January 13, 1972:

There are here before us three appeals from an order of the Court of Common Pleas of Montgomery County. The dramatis personae in this involved and extensive zoning case are as follows:

Levitt & Sons, Inc. and its wholly owned subsidiary, Bill Realty Company, which will be hereinafter referred to as Levitt; Bert C. Daikeler, a Supervisor of Montgomery Township, Montgomery County, Pennsylvania; John B. Kane, Jr. and Annette C. Kane, his wife, Richard E. Crown and Margaret A. Crown, his wife, Richard S. Peer and June Peer, his wife, Willard Zitin and Naomi Zitin, his wife, and Stanley Wisniewski and Theresa Wisniewski, his wife, property owners to whom we will hereinafter refer as protestants; and finally Bert C. Daikeler, Ellis B. Delp and Ernest H. Brenneman in their capacity as Supervisors of Montgomery Township, a Second Class Township of the Commonwealth.

Levitt acquired 808 acres of land in Montgomery Township. It petitioned the Board of Supervisors to amend the Zoning Map so as to place its holdings located in an R-1 zoning district within the less restrictive R-2 district. The permitted land uses are the same in both districts, residential and agricultural by right and institutional by special exception. The principal differences in regulation are that in the R-1 zone each lot sought to be used is required to have an area of 40,000 square feet and a lot width of 200 feet, whereas in the R-2 district the minimum lot size requirements are 20,000 square feet if the lot is served by public sewage and water, and 25,000 square feet if not so provided. The width requirement of the R-2 district is 100 feet. The ordinance also provides less restrictive height, side yard, rear yard and building coverage regulations in the R-2 district.

The Board of Supervisors submitted Levitt's proposal for recommendation to the Montgomery County Planning Commission and the Montgomery Township Planning Commission. Both bodies recommended that the proposed amendment be adopted and the Township

Planning Commission additionally recommended that a rectangular area bounded on all sides by public roads, containing about 1300 acres and including Levitt's 808 acres, be placed within the R-2 zoning district. At least some if not all of the protestants are the owners of properties within the rectangle.

The Board of Supervisors conducted hearings on Levitt's application at which nineteen (19) witnesses testified, creating a record of over 700 pages and 14 exhibits. The Supervisors on July 7, 1969 enacted an ordinance amending the zoning map so as to place the Levitt holdings within the R-2 district. The Board then considered the matter of the adjacent 500 acres at two public hearings. At one only minutes were kept; at the other a transcript of 138 pages was made. On December 1, 1969, after receiving the favorable recommendations of the County and Township Planning Commissions, the Supervisors enacted an ordinance rezoning the 500 acre area to R-2.

The protestants attacked the two ordinances on two fronts: first, pursuant to Section 702 of The Second Class Township Code, Act of May 1, 1933, P. L. 103, Article VII, as amended, 53 P.S. §65741, they filed as to each a complaint as to legality; second, they filed as to each a petition in the nature of the zoning appeal notice provided by Section 1005 of The Pennsylvania Municipalities Planning Code (hereinafter MPC), Act of July 31, 1968, P. L.    , No. 247, 53 P.S. §11005. The complaints under The Second Class Township Code and the petitions under the MPC contained virtually duplicate assertions, most of which were directed to alleged substantive deficiencies. Indeed, the only significant procedural objection was contained in the complaint under The Second Class Township Code as to the legality of the ordinance of December 1, 1969: that the vote of Bert C. Daikeler, one of the majority of two

supervisors who voted for enactment, should be nullified because of an alleged interest of Mr. Daikeler in the change of zoning effected thereby.

The court below considered the two complaints and the two appeals together, after conducting a further hearing at which the "record" made at the supervisors' hearing was admitted into evidence, more witnesses examined and an additional 16 exhibits accepted.

The court below did the following:

As to the ordinance enacted July 7, 1969, rezoning the Levitt holding of 808 acres, it (a) dismissed the complaint under the Second Class Township Code on the ground that no defect in the procedure of adoption had been shown[1] and (b) dismissed the appeal under the MPC because, no application for a building permit having been applied for by Levitt, the matter was not ripe for judicial determination under the authority of *Roeder v. Hatfield Borough Council,* 439 Pa. 241, 266 A. 2d 691 (1970).[2]

As to the ordinance enacted December 1, 1969, rezoning the approximately 500 acres within the rectangle formed by public roads, it (a) sustained the complaint as to legality under the Second Class Township Code on the ground that Mr. Daikeler's vote was ineffective by reason of a disqualifying interest in the zoning change,[3] and (b) sustained the appeal under the MPC because in its view the new zoning effected spot zoning, lacked conformity with the comprehensive plan of the Township, was an unlawful delegation of legislative

---

[1] There is now no appeal here from this action of the court below, Levitt's apparently inadvertent appeal to 110 C.D. 1971 having been withdrawn.

[2] Levitt's appeal from this action is before us as 111 C.D. 1971 and is disposed of in this opinion.

[3] Only Bert C. Daikeler appealed from this action and this appeal is before us as 227 C.D. 1971.

power to a private interest, and, in general, was arbitrary, capricious, discriminatory and unreasonable.[4]

The only appeal from the order of the court below dismissing the attack upon the ordinance of July 7, 1969 under the MPC was taken by Levitt. It was motivated to do so by dicta contained in the opinion of the court below to the effect that if the *Roeder* rule had not required dismissal of the appeal as premature, it would hold that the July 7, 1969 ordinance suffered from the same infirmities to which the ordinance of December 1, 1969 was subject and would have undergone the same fate at its hands. Nevertheless, Levitt prevailed below and it is not therefore a party aggrieved with standing to appeal from the court's disposition of this aspect of the case. *Sherman v. Buffington Township Farms,* 390 Pa. 454, 136 A. 2d 105 (1957); *Pierro v. Pierro,* 434 Pa. 131, 252 A. 2d 652 (1969). The July 7, 1969 ordinance stands unassailed until such time as Levitt takes some action which raises a judiciable controversy. Although Levitt has no standing to appeal, we have considered its attempt to distinguish *Roeder* and have concluded that it is without merit on this record. Levitt tells us that an application for preliminary approval of subdivision plans was made to the Township Planning Commission after the record was closed and before the court below handed down its order. Aside from the impropriety of our considering a matter not of record, the fact that an application for subdivision approval has been made, without particulars, supplies little atmosphere to the vacuum held to be inhibiting in *Roeder.* In addition, as we will explain hereinafter, the court should not have entertained this appeal from the action of the Board of Supervisors.

We now direct our attention to the ordinance enacted December 1, 1969, rezoning the approximate 500

---

[4] This was appealed here by Levitt and is 112 C.D. 1971.

acres not owned by Levitt located within the rectangle formed by public roads, which the court struck down on both procedural (under The Second Class Township Code) and substantive (under the MPC) grounds. The procedural defect found by the court was in the vote of Mr. Daikeler which the court held to be fatally infected by the supervisor's alleged interest. The only evidence of interest was Mr. Daikeler's ownership with his wife of a home on six acres of land in the 500 acre tract and a suggestion that a brother of Mr. Daikeler also owned land in the area. Our reading of the entire record persuades us that the court below erred on this issue. The record shows that the six acres on which Mr. Daikeler's home is located is poorly drained and not suitable for subdivision. This description came from Mr. Daikeler, but it was elicited by accusations of interest by one of the protestants' votaries and stands unchallenged. If the brother referred to is a Mr. Raymond Daikeler, his opinion was that the area should not be rezoned. At least a gentleman so named delivered at one of the meetings a rather moving address expressing affection for and confidence in his brother, the supervisor, and urging a maintenance of the status quo. In any event, there is no evidence in this voluminous record that rezoning the area in question would directly benefit Supervisor Daikeler pecuniarily or otherwise; to the contrary, most of the record quantitatively consists of protestants' sombre forecasts for the area if rezoned.

In support of their contention that Mr. Daikeler's vote was a nullity, the court below and the appellees here cite a number of authorities, all of which we have carefully considered.

In *Commonwealth v. Raudenbush*, 249 Pa. 86, 94 A. 555 (1915), Mr. Justice MESTREZAT said:

" 'There is a general rule of law that no member of a governing body shall vote on any question involving . . . his pecuniary interest, if that be *immediate, particular* and *distinct* from the public interest.'

"A member of a municipal council is disqualified from voting in proceedings involving his personal or pecuniary interest. . . . It is against public policy for a representative of a municipality to vote in its legislative body on any matter which affects him individually." 249 Pa. at 88, 94 A. at 555. (Emphasis supplied). In that case a borough councilman voted for his own resignation as a member of council in order to accept a salaried position with the borough. The Supreme Court held that he did not hold the salaried position because his resignation as a councilman was not effective since it was accepted by virtue of his own vote.

In *Reckner v. German Township School District*, 341 Pa. 379, 19 A. 2d 362 (1941), it was held that a school director might not vote for an increase in his salary as secretary of the board.

In *Genkinger v. New Castle*, 368 Pa. 547, 84 A. 2d 303 (1951), borough councilmen voted themselves a munificent pension. There Mr. Chief Justice BELL said: "It is a well and wisely established principle of public policy in Pennsylvania that a public official may not use his official power to further his own interests. . . . The reasons for this must be obvious—a man cannot serve two masters at the same time, and the public interest must not be jeopardized by the acts of a public official who has a direct pecuniary or personal or private interest which is or may be in conflict with the public interest." 368 Pa. at 551, 552, 84 A. 2d at 305, 306.

In *Eways v. Reading Parking Authority*, 385 Pa. 592, 124 A. 2d 92 (1956), our Supreme Court con-

demned the action of a member of an authority in voting in favor of a resolution preliminary to condemnation of real estate owned by a corporation of which the member was a director.

In *National Bank & Trust Company of Chester County v. East Whiteland Township,* 27 D. & C. 2d 384 (1962), the Court of Common Pleas of Chester County struck down the vote of a supervisor upon an ordinance inhibiting the use of land for quarry purposes where the supervisor in question, prior to assuming office and as a candidate, had not only campaigned against the proposed use, but had contributed to a fund raised for the expenses of an organized opposition.

The very real differences between the circumstances in those cases where the vote directly benefited the public officer or an institution of which he was a member, and Mr. Daikeler's ownership of a residence in an area the rezoning of which could benefit, harm or not affect him at all, are apparent.

In *Marino v. Zoning Board of Harrison Township,* 1 Pa. Commonwealth Ct. 116, 274 A. 2d 221 (1971), the action of supervisors in rezoning land to accommodate a shopping center was attacked on the grounds that the owner of the land attempted to induce the corporate employer of the township supervisors to persuade its employes to effect the rezoning. Judge KRAMER for this court wrote as follows:

"However, in all of the testimony and evidence which were presented by the appellant, there is nothing indicating that the commissioners were influenced by the pressures that were attempted. There is no evidence that any of the township officials were contacted in any way by anyone from Allegheny-Ludlum. In fact, they specifically denied this.

"We do not condone the action of the editor of the Valley Daily News in exerting the kind of pressure he

attempted to exert in this case. What we say is that the record does not prove that his actions caused the Commissioners to act improperly.

"Public policy demands that our elected and appointed officials comport themselves with extreme propriety and discretion. Great trust is imposed in them, and they are duty-bound to vindicate such trust. One who chooses to impugn and cast a shadow upon such officials has the duty to come forth and adequately carry his burden of proof. Mere innuendo and opinion have no place in satisfying such a burden. In the instant case we find much innuendo and opinion, with little else in the record, however, to substantiate appellant's allegations.

"We fail to find the presence of any type of direct personal or pecuniary gain accruing or possibly accruing to the officials involved. Without such finding, appellant's allegations cannot be supported. See National Bank & Trust Company of Chester County v. East Whiteland Township, 27 Pa. Dist. & Co. R. 2d 384 (1962), Genkinger v. New Castle, 368 Pa. 547, 84 A. 2d 303 (1951), Reckner et al. v. German Township School District, 341 Pa. 375, 19 A. 2d 402 (1951).

"Favorable attention is drawn to the opinion of Judge LENCHER, at 391a, citing Weber v. Philadelphia, 437 Pa. 179, 262 A. 2d 297 (1970) : 'In passing upon the propriety of the actions of municipal officials, judicial restraint rather than judicial intervention should guide the courts. We are not a super municipal body and in the absence of improper motivation, demonstrated of record, which prompted the actions of municipal officials, we should not interfere with such actions.' " 1 Pa. Commonwealth Ct. at 124, 125, 274 A. 2d at 255.

We do not hold that in no event can there be a conflict between the public interest and the private inter-

est of a supervisor as an owner of property where rezoning is involved; we merely hold that, as in other cases, the private interest, in order to be disqualifying, must be immediate and direct. To hold that ownership of land in an area proposed for rezoning, standing alone, is disqualifying could stultify many needed zoning changes in rural and residential townships and conceivably zoning itself. We concur in the advice of Mr. Daikeler's personal counsel and the township solicitor, both of whom he consulted, that his abstention in this matter was unnecessary.

Our holding in this regard has the anomalous concomitant, however, of resolving the issue incorrectly decided by the court below in favor of the protestants. The only appeal from the court's action sustaining the protestants' complaint has been taken by Supervisor Daikeler, apparently annoyed by the lower court's characterization of his conduct as improper and illegal. Nevertheless, only parties aggrieved by and having a direct interest in the action of the inferior tribunal may appeal. The supervisors were here named as defendants in their official capacity. Mr. Daikeler, having no personal interest in the legal sense, has no standing to take an appeal personally. *Spellman v. City of Scranton*, 17 Pa. Superior Ct. 223 (1901). *See also Louden Hill Farm, Inc. v. Milk Control Commission*, 420 Pa. 548, 217 A. 2d 735 (1966). The effect of this ruling is that the court's order sustaining the complaint stands, and the ordinance of December 1, 1969 is voided. We have indulged in such a protracted discussion of the matter in the belief that the Supervisors might wish to reenact the ordinance as recommended by the planning agencies.

There remains that portion of the order of the court below sustaining the protestants' appeal under the MPC. The appeal to the court below was from the ac-

tion of the township supervisors. While neither the court below nor any of the parties to this appeal have adverted to the subject, we have concluded that such an appeal is not authorized by the MPC and should not have been entertained.[5] The court below seems to have concluded that the appeal to it from the supervisors' action by persons resident in the area rezoned by the ordinance enacted December 1, 1969 is authorized by Section 801 of the MPC, 53 P.S. §10801, which reads as follows:

"A landowner desiring to challenge the validity of any provision of a zoning ordinance, subdivision and development ordinance or official map or any amendment thereof shall not be required to make or file any application for development as a condition to pursuing any available judicial or administrative relief, except in the following cases:

"1. When the power to grant relief against the challenged provision is lodged in an administrative agency or officer and the application is necessary to a decision upon the appropriate relief. For purposes of this subsection, the words 'administrative agency or officer' shall include the local governing body when acting upon the approval of plats pursuant to Article V and when acting upon the approval of development plans pursuant to Article VII; and

"2. When an application is necessary to define the controversy and to aid in its proper disposition. An application for subdivision approval or for a building permit is not necessary to define the controversy or to aid in its proper disposition within the meaning of this subsection when the challenge is addressed solely to a minimum lot size or maximum density require-

---

[5] The same conclusion is, of course, applicable to the attack under the MPC upon the enactment of the ordinance of July 7, 1969, dismissed by the court below on other grounds.

ment. Nor shall an application relating to buildings be required when the challenge is confined to site planning or subdivision improvement matters, nor shall a subdivision application be required when the challenge is confined to building or land use matters."

It is immediately apparent that this section of the Code does not speak to the question before us. It is negative in character and its chief purposes are to controvert the contention sometimes made that a decision on the validity of a zoning provision might not be made prior to the filing of detailed subdivision plans[6] and to dispense with the requirement that a landowner desiring to assert the invalidity of minimum lot size or density regulations must make application for a building permit. It does not provide that a landowner may appeal to court from the action of supervisors rezoning an area in which his land is located. Nor does it provide that a landowner may in any case complain that a zoning amendment affecting his land is *less* restrictive than he would desire it to be, as do the protestants here. In the words of Justice COHEN in *Roeder, supra,* "On many occasions, this Court has stated questions as to the validity or constitutionality of an enactment will not be decided in vacuo but only after it has actually been applied to the litigant. . . . This principle is applicable regardless of whether the premature attack is by an action in equity or through the administrative framework, and it does not matter whether an individual is protesting a restriction on his use of his land or the permission given another to use the other's land in a particular way. In Section 801 of the MPC the legislature has modified this rule some-

---

[6] This contention was rejected in *National Land and Investment Company v. Easttown Township,* 419 Pa. 405, 215 A. 2d 597 (1965), decided before the enactment of the Pennsylvania Municipalities Planning Code.

what as to *landowner who is restricted in the use of his land,* but the Act in no way affects the rules governing an attack by an individual on an ordinance which grants permission to a landowner to use his land in a certain way." 439 Pa. at 248, 266 A. 2d at 695 (emphasis supplied).

Further, Section 801 refers to "any available judicial or administrative relief." We are thus required to examine the Code to determine whether the judicial relief of appeal from the township supervisors' action in enacting a zoning change is available. Article X deals with zoning appeals to courts. Section 1001, thereof, 53 P.S. §11001, provides: "Zoning appeals shall include appeals from the decisions of the board of zoning appeals and appeals upon reports of the board in proceedings to challenge the validity of any ordinance or map." Section 1003, 53 P.S. §11003, provides: "Zoning appeals may be taken to court by any party before the board or any officer or agency of the municipality." Section 1004, 53 P.S. §11004, requires that zoning appeals "shall be filed not later than thirty (30) days after issuance of notice of the decision or report of the board." Section 1005, 53 P.S. §11005, regulating the manner of taking zoning appeals, again refers exclusively to the decision or report of the board, here as in the other instances mentioned meaning the Zoning Hearing Board. Nowhere in Article X is there afforded a right to appeal from a decision of any body except the Zoning Hearing Board.

Article IX of the Code deals with the Zoning Hearing Board. Subsection 908(9), 53 P.S. §10908(9), requires the board to make findings of fact and conclusions, and Section 1009, 53 P.S. §11009, empowers the court on appeal to make findings if it takes additional testimony. Most significantly, however, Section 911, 53 P.S. §10911, sets out the only circumstances under

which there may be a direct appeal to court from any body other than the Zoning Hearing Board, and it is, therefore, reproduced here in full. "Challenges to the validity of a subdivision and land development ordinance adopted pursuant to Article V or to the validity of a planned residential development ordinance adopted pursuant to Article VII and appeals from any action of the zoning officer thereunder shall be governed by Sections 909 and 910. But when the planning agency or governing body has held a hearing upon an application for development under the subdivision and land development ordinance or the planned residential development ordinance, such hearing shall be deemed in lieu of a hearing by the board provided for under Section 910 and appeal from any decision or determination of the agency or governing body (including challenge to the validity of any provision of such ordinance) shall lie directly to court as provided in Sections 512, 712 and 1001." This section, paraphrased, states that a challenge to the validity of a subdivision ordinance or a planned residential development ordinance shall be heard by the zoning hearing board, but if the planning agency or governing body has in fact held a hearing upon an application for development under a subdivision ordinance or planned residential ordinance, an appeal may be taken directly to the court. We observe, therefore, that the Legislature, when it decided to authorize an appeal from a body other than the zoning hearing board, did so explicitly.[7]

We hold, therefore, that Section 801 does not authorize the appeal here taken from the action of the Board of Supervisors to the court below and that the Code provides as the exclusive procedure for one de-

---

[7] See also Section 1011, 53 P.S. §11011, authorizing the use of the procedures set out in Article X in cases where appeals from the governing body directly to court are allowed by the Code.

siring to test the validity of zoning regulations restricting him from a desired use of his property to make application in the usual fashion, that is through the zoning hearing board and thence to the court.

Not only does this holding comport with the statute, it provides a record appropriate for appellate review. Zoning hearing boards are required to make findings of fact, and the trial courts are empowered to make supplemental findings if they receive additional evidence. When the matter comes to an appellate court, if this should happen, it arrives with that most essential ingredient of appellate review, findings made by the triers of facts. The instant case provides strong support for the wisdom of the drafters of the Code in not providing an appeal from the supervisors except in the limited circumstances of Section 911 relating to subdivision ordinances and planned residential development ordinances. Not only has this court no findings of fact before it, some of the record before the Board of Supervisors consists only of minutes and at least one hearing before the Board of Supervisors consisted solely of unsworn statements of opinion by citizens attending the meeting.

Since this opinion is lengthy and because the order hereinafter made, in order to achieve technical accuracy, necessarily refers to docket numbers, there may be some advantage to summarize what we do here:

As to the ordinance enacted July 7, 1969, rezoning Levitt's 808 acres, there is before us only Levitt's appeal from the action of the court below dismissing the protestants' appeal under the MPC. Since Levitt prevailed below, its appeal to this court must be dismissed.

As to the ordinance adopted December 1, 1969, rezoning the remaining 500 acres within the public roads, the court below sustained the protestants' complaint as to legality brought under The Second Class Town-

ship Code. While we do not agree with the court's action, the only party who appealed to this court was the supervisor whose vote was nullified for interest. We hold that he was not a party aggrieved entitled to appeal.

As to the appeal under the MPC to the action of the supervisors in enacting the ordinance of December 1, 1969, we hold that it should not have been entertained by the court because the MPC, as presently written,[8] does not authorize such proceedings. For this reason the court's order sustaining the protestants' appeal must be reversed.

The appeal of Levitt & Sons, Inc. and Bill Realty Company from the order of the court below dismissing the zoning appeal of John B. Kane, Jr., et al. to 69-11277 in the court below, being 111 C.D. 1971 here, is dismissed.

The appeal of Bert C. Daikeler from the order of the court below sustaining the complaint of John B. Kane, Jr., et al., being No. 45, November Term, 1969, Criminal Division below and 227 C.D. 1970 here, is dismissed.

The order of the court below sustaining the zoning appeal of John B. Kane, Jr., et al. and nullifying the ordinance enacted December 1, 1969 to 69-17813 below and 112 C.D. 1971 here, is reversed.

---

[8] There is pending before the General Assembly House Bill 1129 containing substantial revisions to the MPC, particularly to the procedural provisions. This Bill, if enacted, will hopefully cure the deficiencies in the present statute, the cause of some of the difficulties in this case.