Uhlan Dayoub, D.D.S., Petitioner *v.* Commonwealth of Pennsylvania, State Dental Council and Examining Board, Respondent

Argued October 6, 1982, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*Daniel Joseph,* for petitioner.

*Michael L. Solomon,* Assistant Counsel, with him *John J. Flynn,* Assistant Counsel, *James J. Kutz,* Assistant Counsel, *David F. Phifer,* Chief Counsel, *Jay C. Waldman,* General Counsel, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE BLATT, December 30, 1982:

Uhlan Dayoub, D.D.S. (petitioner) appeals here an order of the State Dental Council and Examining

Board (Board) revoking his license to practice dentistry. He had been charged with writing prescriptions without a legitimate medical purpose in violation of Section 3(i) of the Dental Law (Law), Act of May 1, 1933, P.L. 216, *as amended,* 63 P.S. §122(i).

The Board found that the petitioner, a practitioner of 27 years, has operated a one-chair dental office in New Kensington, a community where he has also been the local school dentist for approximately 25 years. He was charged with prescribing excessive amounts of a pain-killer, Percodan, to indigent patients who suffered from impacted wisdom teeth or were in need of full-mouth rehabilitation.[1] Many of these indigent clients were in dire need of oral surgery, which the petitioner could not perform because of the local hospital's refusal to admit welfare cases. The Board, while noting that the use of Percodan is an accepted dental practice to control severe pain, could not find a valid medical reason to justify the petitioner's prescriptions, and therefore ordered the revocation of his license. He appealed to this Court, and a stay pending review was granted on September 3, 1981.

The petitioner argues that he was denied procedural due process by the Board, noting particularly that the Board members vigorously questioned him many times during the hearing as if they were conducting a cross-examination. He argues that this questioning evidenced bias and predisposition on the part of the Board members and amounted to an unlawful commingling of adjudicative and prosecutorial functions. *See Roche v. State Board of Funeral*

---

[1] It should be noted that the Board also found that most of the time, the petitioner also wrote these patients a prescription for an antibiotic.

*Directors*, 63 Pa. Commonwealth Ct. 128, 437 A.2d 797 (1981).

The petitioner cites some examples of the Board's interrogation. At page 130a of the record, Dr. Penzur, a Board member, while questioning the petitioner, said:

I must say that I have been practicing for longer than Dr. Dayoub, and we are exposed to some of these procedures, and I find much of this incredible.

Now, I know very well that if I chose that I could sell a prescription blank from my office for $10. I could sell a filled prescription blank for so many Percodan for probably $20 or $25.

We can't be naive. We are in a drug culture. Now, either Dr. Dayoub was completely innocent and there was a dupe of these people, which, it seems to me, a mature man who has been in practice for almost 30 years should expect more of that, or he was engaging in trafficking.

We have to decide in our minds how to account for this phenomenon, because we are all practitioners. We have had hearings like this before. We are not naive. We know what goes on in the street.

So, we have to be incredulous about some of the facts that have come out here and some of the statements that are made.

Later, Dr. Mayes, another Board member, asked the petitioner how long it takes to do an extraction. After the petitioner answered that it took anywhere from a few minutes to 15 minutes at the most. Dr. Mayes stated, "So, really $10 for a prescription was pretty easy money in two minutes?" Dr. Mayes then

questioned the petitioner relative to the hospital's admissions policy:

> DR. MAYES: Did it ever occur to you that maybe you were doing unnecessary admissions, that the condition did not warrant hospitalization?
>
> THE WITNESS: No, I never do them; I never put people in unnecessarily; never.
>
> DR. MAYES: In whose opinion?
>
> THE WITNESS: My opinion.
>
> DR. MAYES: *Did it ever occur to you that maybe you are wrong?* (Emphasis added.)
>
> THE WITNESS: It could be. Have you done impaction cases?
>
> DR. MAYES: Doctor, I think I am the one asking the questions.

At this point, the petitioner's counsel objected again to the course the hearing had taken. He questioned the Board's neutrality and advised the members that it was his understanding that a determination was not to be made until the testimony had finished and a rational, reflective, neutral discussion among the Board members could take place. After the Chairman of the Board, Charles F. McDermott, D.D.S., suggested that the questioning cease, Dr. Mayes continued:

> I think it is important. I know I am not finished. I feel it is my prerogative to continue until I am satisfied.
>
> My line of questioning wasn't attacking him. My question is very simple: why is he dispensing narcotics?

Dr. Mayes and later, Dr. Miller, another member, continued to question the witness, over defense objections, about matters such as post-graduate work and office sterilization procedures, matters which the peti-

tioner argues were of questionable relevance or materiality.

It is clear that a "fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,* 349 U.S. 133, 136 (1955), and that due process applies to administrative agencies just as it does to courts. *Bruteyn Appeal,* 32 Pa. Commonwealth Ct. 541, 380 A.2d 497 (1977). It is equally clear that due process is denied where there is a commingling of the prosecutorial and adjudicatory functions before an administrative body. *Roche,* and that administrative tribunals must be unbiased and must avoid even the appearance of bias to be in accordance with principles of due process. *Donnon v. Downingtown Civil Service Commission,* 3 Pa. Commonwealth Ct. 366, 283 A.2d 92 (1971). In *Schlesinger Appeal,* 404 Pa. 584, 172 A.2d 835 (1961), the Supreme Court wrote:

> Moreover, a predilection to favor one side over the other is not required in order to vitiate a judicial proceeding as being violative of due process. Merely, "a possible temptation to the average man as judge . . . not to hold the balance nice, clear, and true" is sufficient.

404 Pa. at 598, 172 A.2d at 841. *See also Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145 (1968). As we stated in *Pennsylvania Human Relations Commission v. Thorp, Reed & Armstrong,* 25 Pa. Commonwealth Ct. 295, 361 A.2d 497 (1976), the factfinding process, with which we are concerned here, must be afforded the broadest dimensions of constitutional protection.

We believe that there is ample evidence in the record to indicate that the petitioner was denied a fair hearing before a fair tribunal. While we agree with the Board position that it has the power, indeed the duty, to ask questions to clarify matters and to

elicit relevant information not presented by the attorneys, we believe it clearly overstepped its boundaries here. The record reveals several occasions during which a member or members of the Board heatedly questioned the petitioner and argued with him in such a manner that their behavior was much more in line with that of a prosecuting attorney than of a neutral, detached and impartial decision-maker.

Where, as here, the Board's partiality and hostility appear to us have gone too far toward the extremes of their authority, the fairness of the hearing is obviously vitiated, even in the absence of any specific instance of reversible error. *See* K. Davis, Administrative Law Treatise §12.02 (1958).

We will, therefore, reverse the order of the Board and remand this case so that the petitioner may be afforded a fair and impartial hearing.

ORDER

AND Now, this 30th day of December, 1982, the order of the State Dental Council and Examining Board in the above-captioned matter is hereby reversed and the case is remanded to that Board for another hearing in accordance with this opinion.