546 A.2d 744

Thornbury Township Board of Supervisors, Appellant *v.* W. D. D., Inc., Appellee.

Argued June 13, 1988, before Judges CRAIG and DOYLE, and Senior Judge NARICK, sitting as a panel of three.

*Henry T. Zale, O'Donnell, Weiss & Mattei, P.C.,* for appellant.

*Louis J. Colagreco, Jr.,* with him, *Thomas A. Riley, Jr.,* for appellee.

OPINION BY JUDGE CRAIG, August 22, 1988:

The Thornbury Township Board of Supervisors appeals an order of the Court of Common Pleas of Chester County invalidating a vote of the supervisors on final approval of a subdivision plan of W.D.D., Inc. (WDD), because one of the supervisors, Mr. John Copeland, should have disqualified himself from voting, and remanding the case to the supervisors for a new vote.

The issue raised in this appeal is whether a member of the board of supervisors, who appears as a private individual, represented by counsel, before the township zoning hearing board to object to an application for variances for a proposed subdivision, may subsequently participate in the board's consideration of an application for final approval of that subdivision. Because, we conclude that, under the facts of this case, Supervisor Copeland should not have participated in consideration

of WDD's application for final subdivision approval, we affirm.

. The facts of the case are undisputed. In 1985, WDD purchased a 164-acre tract of land in Thornbury Township and filed a preliminary subdivision plan with the township. The township planning commission members, then ·including Mr. John Copeland, reviewed the preliminary· plan and recommended that the board not approve the subdivision plan.

In December ·1985, the subdivision plan came before the board of supervisors, and the board suggested that WDD revise its plan to conserve approximately sixteen acres of woodland. Even though variances were necessary under the board's suggested plan, to comply with the Thornbury Township Zoning Ordinance, WDD modified its plan as suggested. On December 30, 1985, the supervisors passed a resolution directing WDD to proceed to the zoning hearing board to obtain the required variances, with assurance that the supervisors' body would support WDD in proceedings before the zoning hearing board.

In January 1986, Mr. Copeland became a. member of the board of supervisors. In February 1986, the zoning hearing board conducted a hearing on WDD's application for the variances. Pursuant to the supervisors' resolution of December· 30, 1985, two of the supervisors appeared at the hearing in their official capacity in . support of WDD's application. The third supervisor, Mr.· Copeland, appeared before the zoning hearing board as a private individual, represented by counsel, to oppose WDD's application for the variances. Mr. . Copeland's attorney cross-examined WDD's witnesses, and submitted a brief in opposition to WDD's application.

On .April 3, 1986, the zoning hearing board granted . the variances and the preliminary subdivision plan came

before the supervisors for formal approval. On April 22, 1986, WDD received a letter from Supervisor Copeland, on official stationery, advising it that the board had disapproved its plan. However, the letter was not the result of any official supervisors' action; only Supervisor Copeland had signed the letter. As Supervisor Copeland stated in the letter, under section 508 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10508(3), April 22, 1986 was the last day the board could render a decision rejecting the plan without the plan being deemed approved.[1]

On May 21, 1986, on Supervisor Copeland's motion, the supervisors voted to have the township intervene in an appeal of the zoning hearing board's grant of variances brought by citizen-objectors.[2] The supervisors also formally voted to disapprove the preliminary subdivision plan.

---

[1] Section 508 of the MPC provides:
All applications for approval of a plat . . . whether preliminary or final, shall be acted upon by the governing body or the planning agency . . . but the governing body or the planning agency shall render its decision and communicate it to the applicant not later than ninety days . . . following the date the application is filed. . . .

. . . .

(3) Failure of the governing body or planning agency to render a decision and communicate it to the applicant within the time and in the manner required herein shall be deemed an approval of the application in terms as presented. . . .
53 P.S. §10508.

[2] The court of common pleas reversed the zoning hearing board's granting of the variances. This court affirmed the decision of the court of common pleas in *Duling v. Zoning Hearing Board of Thornbury Township,* an unreported memorandum opinion at 2789 C.D. 1986, filed on September 14, 1987.

On May 22, 1986, WDD filed a complaint in mandamus and a motion for peremptory judgment in the court of common pleas, requesting that, in accordance with the provisions of section 508 of the MPC, the supervisors be directed to approve its preliminary subdivision plan, and the trial court so ordered.

On July 7, 1986, WDD submitted its final subdivision plan to the supervisors for approval, the final plan being a refinement of the preliminary plan ordered approved by the court. On September 8, 1986, the supervisors met to vote on the final subdivision plan. Before the vote, WDD requested that Supervisor Copeland disqualify himself from voting due to personal prejudice and bias. Copeland refused, and, with Copeland in the majority, the supervisors voted 2 to 1 to approve the plan, but subject to conditions.

WDD appealed to the court of common pleas, asserting that the conditions attached to the approval were so onerous as to constitute a denial, and that the decision of the supervisors should be vacated because of Supervisor Copeland's participation in the decision.

On July 10, 1987, the Chester County Court of Common Pleas vacated the September 8, 1986 vote which had granted conditional approval to the final subdivision plan of WDD, based on the refusal of Supervisor Copeland to disqualify himself from participating in the consideration of the plan. The trial court remanded the case for a new vote on the plan.

The supervisors contend that Copeland was not required to disqualify himself because he did not have any direct personal interest in WDD's application, distinct from that of the general public. There is no dispute that Copeland had no pecuniary interest in the application of WDD, nor is there any assertion that Copeland had any direct private interest in the application.

The supervisors cite *Levitt & Sons, Inc. v. Kane,* 4 Pa. Commonwealth Ct. 375, 285 A.2d 917 (1972). However, *Levitt* merely held that a supervisor who owns property in a zoning district that the board of supervisors is voting to rezone does not possess a disqualifying private interest. 4 Pa. Commonwealth Ct. at 382-84, 285 A.2d at 920-22.

Moreover, *Levitt* and other cases cited by the supervisors involved public officials acting in their legislative capacity. However, when a public official is acting in an adjudicative capacity, the specificity of the issue necessarily demands a more sensitive test as to disqualification.

This court noted the special standard required of a public official when functioning in an adjudicative capacity in *Dayoub v. State Dental Counsel and Examining Board,* 70 Pa. Commonwealth Ct. 621, 625, 453 A.2d 751, 753 (1982):

> [A]dministrative tribunals must be unbiased and must avoid even the appearance of bias to be in accordance with the principles of due process. (Citation omitted.) In Schlesinger Appeal, 404 Pa. 584, 172 A.2d 835 (1961), the Supreme Court wrote:
>
> 'Moreover, a predilection to favor one side over the other is not required in order to vitiate a judicial proceeding as being violative of due process. Merely, "a possible temptation to the average man as judge . . . not to hold the balance nice, clear, and true" is sufficient.'
> 404 Pa. at 598, 172 A.2d at 841.

Thus the pivotal issue is whether the board of supervisors' vote on an application for final subdivision approval was a legislative act or an adjudicative one.

In *North Point Breeze Coalition v. Pittsburgh,* 60 Pa. Commonwealth Ct. 298, 431 A.2d 398 (1981), this

court stated that, when an action of a governing body does not establish a rule of general application, but rather applies specific criteria to a single applicant and a single piece of property, the governing body is acting in its adjudicative capacity and not its legislative capacity.

In this case, the supervisors' decision as to WDD's application for subdivision approval was an action to administer planning and zoning ordinances already in existence. Moreover, consideration of WDD's application, if approved, constituted an action granting WDD a privilege to subdivide and develop a specific tract of land. Thus, in deciding WDD's application for subdivision approval, the supervisors were acting in an adjudicative capacity.

*McVay v. Zoning Hearing Board of New Bethlehem Borough*, 91 Pa. Commonwealth Ct. 287, 496 A.2d 1328 (1985), concerned a member of a zoning hearing board and thus exemplifies the standard applied with respect to adjudicative officials. In *McVay*, a majority of the members of the borough zoning hearing board had signed a petition opposing the adoption of a zoning ordinance to rezone property for a low cost housing project. The borough council refused to rezone the property, and the landowner who had also applied for a special exception appeared before the zoning hearing board. The members who had signed the petition participated in the board's recognition of the request for a special exception. Under these facts, this court upheld the trial court's decision to vacate the board's rejection of the application for a special exception because of the zoning board members' bias.

In this case, the conduct of Supervisor Copeland evidenced a greater appearance of bias, if not actual bias, toward WDD's application for subdivision approval than that shown in *McVay*. He personally appeared with counsel before the zoning hearing board to oppose

WDD's application for variances. He sent a letter to WDD, indicating that the board rejected the preliminary application, when the board had not taken any official action on the application. The vote of the supervisors was therefore infirm.

Accordingly, we affirm the trial court's decision vacating the vote of the supervisors because of Mr. Copeland's bias and remanding the case to the board for another vote.

## ORDER

NOW, August 22, 1988, the order of the Court of Common Pleas of Chester County, at No. 86-07258, dated July 10, 1987, is affirmed.