Gaebel, et ux. *v.* Thornbury Township.

Argued February 8, 1973, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*Holbrook M. Bunting, Jr.,* with him *Trevaskis, Doyle, Currie, Nolan & Bunting,* for appellants.

*Charles C. Keeler,* with him *Fronefield, DeFuria and Petrikin,* for appellee.

OPINION BY JUDGE MENCER, April 6, 1973:

This is an appeal from an order of the Court of Common Pleas of Delaware County which sustained preliminary objections filed by Thornbury Township (Thornbury) to the petition for appointment of viewers and the order appointing a board of view to ascertain and award just compensation to William F. Gaebel and Virginia R. Gaebel (Gaebels).

Gaebels own certain land in Thornbury Township which was zoned commercial. On March 6, 1972, Thornbury amended the zoning classification, and approximately three acres of Gaebels' property were rezoned as a flood plain, which limits the use of the land in question to such activities as cultivating and harvesting crops, grazing animals, an outdoor plant nursery, orchard, arboretum and, by special exception, recreation-

al uses. The rezoning classification to a flood plain was in accord with the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L. 805, art. VI, §605, 53 P.S. §10605.

The land involved here has a history of being flooded by waters overflowing the banks of Chester Creek. Following the reclassification of a portion of their land, the Gaebels petitioned, under Section 502(a) of the Eminent Domain Code, Act of June 22, 1964, P. L. 84, art. V, §502(a), 26 P.S. §1-502(a), for appointment of viewers, asserting damages against Thornbury for the loss of the usages permitted under the prior commercial zoning.

We are confronted with the contention of the Gaebels that they can seek damages under the Eminent Domain Code for the effect upon their property of a change in a zoning ordinance. Thornbury counters with the contention that the exclusive procedure for challenging a zoning regulation, on the basis that it is confiscatory, is under the provisions of the Pennsylvania Municipalities Planning Code. We must agree with Thornbury's position and affirm the lower court.

In *White's Appeal*, 287 Pa. 259, 264-65, 134 A. 409, 411 (1926), we find the guideline for the correct disposition of this case where Justice KEPHART (later Chief Justice) stated:

"Police power should not be confused with that of eminent domain. Police power controls the use of property by the owner, for the public good, its use otherwise being harmful, while eminent domain and taxation take property for public use. Under eminent domain, compensation is given for property taken; injured or destroyed, while under the police power no payment is made for a diminution in use, even though it amounts to an actual taking or destruction of property. . . .

". . . If there is doubt as to whether the statute is enacted for a recognized police object, or if, conceding

its purpose, its exercise goes too far, it then becomes the judicial duty to investigate and declare the given exercise of the police power invalid. . . ."

Gaebels contend the amended zoning ordinance takes their property without just compensation by severely restricting its use. This may be said of every valid zoning ordinance. Justice KEPHART also spoke to this contention in *White's Appeal* when he stated:

"No matter how seemingly complete our scheme of private ownership may be under our system of government, all property is held in subordination to the right of its reasonable regulation by the government clearly necessary to preserve the health, safety or morals of the people. Obedience to such regulation is not taking property without due process; that clause does not qualify the police power. . . ." 287 Pa. at 265, 134 A. at 411.

The procedure statutorily prescribed for testing the validity of substantive provisions of a zoning ordinance is the exclusive remedy available to one aggrieved by those provisions. *Pittsburgh Outdoor Advertising Company v. Clairton*, 390 Pa. 1, 133 A. 2d 542 (1957). In *Taylor v. Moore*, 303 Pa. 469, 476, 154 A. 799, 801 (1931), the Supreme Court stated that "[a]ll questions involved in zoning ordinances, whether they relate to confiscation of property or to the effect of any of the provisions of an ordinance, must be heard and considered under the remedy provided by the Zoning Acts of assembly."

Where a remedy or method of procedure is provided by an act of assembly, the directions of such act must be strictly pursued and such remedy or procedure is exclusive. *Knup v. Philadelphia*, 386 Pa. 350, 126 A. 2d 399 (1956). Here articles IX[1] and X[2] of the Pennsylvania Municipalities Planning Code (MPC) provid-

---

[1] 53 P.S. §10901 et seq.
[2] 53 P.S. §11001 et seq.

ed the procedure to be followed when a challenge is made to the validity of any provision of a zoning ordinance. Article X of the MPC was repealed by the Act of June 1, 1972, P. L.     , No. 93, §18, effective July 31, 1972, and Section 1001 of MPC, 53 P.S. §11001, now reads, in accord with prior prevailing cases law,[3] as follows: "The proceedings set forth in this article shall constitute the exclusive mode for securing review of any ordinance . . . adopted . . . pursuant to this act."

We are certainly aware that private property may not be taken for public use without just compensation. Likewise, we recognize that a taking may well occur indirectly through excessive regulation under the police power. Although property may be regulated, if regulation goes beyond reasonable limits, it must be recognized as a taking of private property which can only be effectuated by eminent domain. Here we have a case where public acquisition, rather than regulation, may well be the necessary route to gain the desired dominion over the property needed for flood control. However, we do not have that question before us in this appeal. What we decide today is that the Gaebels' exclusive recourse is to challenge the constitutionality of Thornbury's zoning ordinance under the provisions of review established by the MPC, and they cannot at this time avail themselves of compensation under the provisions of the Eminent Domain Code.

If Thornbury's zoning ordinance is constitutional as a reasonable regulation in the exercise of the police power, then Gaebels are not entitled to monetary compensation, but if it is determined to be unconstitutional and invalid, then Gaebels, property will not be

---

3 See *Levitt and Sons, Inc. v. Kane*, 4 Pa. Commonwealth Ct. 375, 285 A. 2d 917 (1972); *Clover Hill Farms, Inc. v. Lehigh Township Board of Supervisors*, 5 Pa. Commonwealth Ct. 239, 289 A. 2d 778 (1972).

subject to any limitations or restrictions that would constitute a taking of their property. *Hofkin v. Whitemarsh Township,* 88 Montg. Co. L. R. 68 (1967).

It would only be when Thornbury, clothed with a power of condemnation given to it by statute, substantially deprived the Gaebels of the beneficial use and enjoyment of their property by the statutorily provided condemnation procedure, or otherwise, that the Gaebels would have access to the remedies and provisions of the Eminent Domain Code. *Griggs v. Allegheny County,* 402 Pa. 411, 168 A. 2d 123 (1961), *rev'd,* 369 U.S. 84 (1962), *reh. denied,* 369 U.S. 857 (1962).[4]

Order affirmed.

---

Dissenting Opinion by Judge Kramer:

I most respectfully dissent for the reason that my review of the record in this case leads me to believe that there may have been a taking of the Gaebel property by the municipality within the meaning and intent of the Pennsylvania Constitution of 1968.

The principle of law that the sovereign shall not take private property for public use without compensation is as deep-seated in the common law as any other principle of law. As far back as June 15, 1215 A.D., we find in the Magna Charta several references to this principle (e.g., Section 39). Blackstone (at 1 *Blackstone Commentaries* 139) in commenting on what was the "third absolute right," viz., property, highlighted the principle when he wrote: "And by a variety of ancient statutes it is enacted, that no man's lands or goods shall be seized into the king's hands, against the great charter, and the law of the land; . . . unless . . . it shall be redressed. . . . So great moreover is the regard of the

---

[4] The reversal by the United States Supreme Court was on the question of whether there was a "taking" in the constitutional sense.

law for private property, that it will not authorize the least violation of it; no, not even for the general good of the whole community." Hugo Grotius, the Dutch legal philosopher, reputed to be the creator of the principle of the compensation clause, in *De Jure Belli et Pacis* (1625), Bk. II, ch. XIV, stated: "A king may two ways deprive his subjects of their right, either by way of punishment or by virtue of the eminent power. But if he does it the last way, it must be for some public advantage, and then the subject ought to receive, if possible, a just satisfaction for the loss he suffers, out of the common stock." This principle has been contained not only in the Federal Constitution, but in every constitution of this Commonwealth to the present time. The Pennsylvania Constitution of 1968, in Article I, Section 10, says in pertinent part: ". . . nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." In Article X, Section 4, we find: "Municipal and other corporations invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements and compensation shall be paid or secured before the taking, injury or destruction." The General Assembly of Pennsylvania with the intent and purpose of carrying out the mandate of these constitutional provisions passed the Eminent Domain Code, Act of June 22, 1964, Spec. Sess., P. L. 84, as amended, 26 P.S. §1-101 et seq., wherein Section 502, 26 P.S. §1-502 states: "(e) If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers substantially in the form provided for in subsection (a) of this section, setting forth such injury." The Gaebels filed such a petition for the appointment of viewers.

Another principle of law, which is well-established in this Commonwealth, is that legislation, including zoning ordinances, is presumed to be constitutional. Anyone so attacking the constitutionality of such legislation in this Commonwealth has a heavy burden. *Gaudenzia, Inc. v. Zoning Board of Adjustment*, 4 Pa. Commonwealth Ct. 355, 287 A. 2d 698 (1972); *Nagorny v. Zoning Hearing Board*, 4 Pa. Commonwealth Ct. 133, 286 A. 2d 493 (1971); *St. Vladimir's Ukranian Orthodox Church v. Fun Bun, Inc.*, 3 Pa. Commonwealth Ct. 394, 283 A. 2d 308 (1971). It is interesting to note in this case that no one is attacking the constitutionality of the zoning ordinance in question. All parties have apparently presumed the zoning ordinance and regulation in question to be constitutional, and so we must also make such a presumption. This writer is well aware of the development of the relatively recent principles of law governing zoning, over the past 50 years in this country. It goes without question that a person may use his property in any way he sees fit so long as he doesn't violate the Constitution, create a nuisance, or violate some law including zoning ordinances. *See Lord's Appeal*, 368 Pa. 121, 81 A. 2d 533 (1951). No question is being raised herein that one's property may not be regulated by a zoning ordinance under the police power of government whereby the health, welfare and safety of the public are to be protected. This dissent does not question the majority's statement of law that a challenge to the validity of a zoning ordinance must be carried out through the exclusive remedies provided for in the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P. L. 805, as amended, 53 P.S. §10101 et seq. The problem, however, as this writer sees it, is that no one is challenging the validity of the zoning ordinance in question. The questions should be whether, by virtue of this zoning regulation, the action of the municipality was in fact a regulation

under the police powers of the sovereign for which there was no taking and there are no damages forthcoming to the property owner, or whether in fact there was a taking of the Gaebels' property without compensation. It is conceivable that if a board of view was established, it could decide that there was no taking or damages to the Gaebels. Whether there was a taking is a combined question of fact and law which cannot be decided without a record made. The final determination cannot be made on the existing pleadings.

As this writer views the record in this case, there could be a difference between zoning regulations (such as setbacks) which are equally applicable to all within the zoning area for the benefit of the municipality and all the property owners in the municipality, and a zoning regulation applicable to but one property owner (not applicable to all the property owners in the municipality) which is for the benefit of all the property owners in the municipality excepting only the property owner against whom the regulation is applicable. In this latter case, I believe such a regulation is in fact a taking. Until we have all of the facts, we cannot determine this issue. Obviously, the facts cannot be determined until there is a hearing. If it could be developed in this case that the Gaebels' property has been singled out as the sole property to be used as a flood plain for the protection of the municipality and its property owners, and the restrictive regulations are imposed in such a way that for all practical purposes the Gaebels have no use of this property, then it is clear to me that there has been a taking.

It seems to this writer that if a property owner is entitled to an eminent domain proceeding for the taking of his property by virtue of the fact that airplanes cross over and invade his property in the vicinity of an airport, thereby reducing the use of his property to a

minimum,[1] then the restrictive use of the Gaebels' property through the flood plain regulation is likewise a condemnation case. In the case of *Pennsylvania Coal Company v. Mahon,* 260 U.S. 393, 67 L. Ed. 322 (1922), Mr. Justice HOLMES stated: "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized, some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits, or the contract and due process [and eminent domain] clauses are gone. One fact for consideration in determining such limits is the extent of the dimunition. When it reaches a certain magnitude, in most if not all cases there must be an exercise of eminent domain and compensation to sustain the act. So *the question depends upon the particular facts.* The greatest weight is given to the judgment of the legislature but it *always* is open to interested parties to contend that the legislature has gone beyond its constitutional power." (Emphasis added.) 260 U.S. at 413. Justice HOLMES also stated: "The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. It may be doubted how far exceptional cases, like the blowing up of a house to stop a conflagration, go—and if they go beyond the general rule, whether they do not stand as much upon tradition as upon principle. . . . We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change. As we already have said, this is a question of degree— and therefore cannot be disposed of by general propositions." 260 U.S. at 415-16.

---

[1] *Griggs v. Allegheny County,* 402 Pa. 411, 168 A. 2d 123 (1961), *rev'd,* 369 U.S. 84 (1962), *reh. denied,* 369 U.S. 857 (1962).

It seems to this writer that the question of whether an ordinance in effect creates a "taking" or is a mere "regulation" should be put to the following four part test:

(1) What is the nature of the harm caused by the owner's use of the property and the manner of causing that harm?

(2) What is the nature or character of the "taking" or "regulation"?

(3) What is the magnitude of the "taking" or extent of interference with the property interest?

(4) What is the extent of the public interest being protected?

In the case of *Morris County Land Improvement Company v. Township of Parsippany-Troy Hills*, 40 N.J. 539, 193 A. 2d 232 (1963), the New Jersey court determined that there was a compensable taking where the municipal government, through a zoning ordinance, restricted the use of certain swampy land for, among other things, flood control purposes. Although that court declared the zoning ordinance unconstitutional, it recognized that where such governmental actions treated the land as a public facility for the benefit of the local government and its people, there was a compensable taking despite the facade of a mere regulation. *See also Andress v. Zoning Board of Adjustment*, 410 Pa. 77, 188 A. 2d 709 (1963).

In the case before us, why should the Gaebels be forced to subsidize and bear the cost of a resource acquisition of Thornbury Township? If the Township needs their property to protect the municipality, it may take the property, but it must also pay for such taking.

Applying the facts of this case, as we have them to the proffered four part test, I suggest:

(1) Neither the Gaebels' property nor its use creates a nuisance or harm to neighboring properties. Natural precipitation causes the problems.

(2) The nature of the "regulation" or "taking" is the severe restriction on the use of the land.

(3) The magnitude of the taking should be recognized as onerous and oppressive. The Gaebels cannot make reasonable use of their property.

(4) The public interest is found in a governmental functional use of Gaebels' land as a public facility for the benefit of the municipality and other land owners, without any apparent reciprocal benefit in the Gaebels.

If further proof were needed, reference should be made to Section 413 of the Pennsylvania State Highway Law, Act of June 1, 1945, P. L. 1242, as amended, 36 P.S. §670-413, where the Legislature recogized as a compensation matter under eminent domain the taking of one's land for a "free and unobstructed view" across lands at intersections of highways, as a matter of highway safety. The clincher for the purposes of this case is that Section 413 includes a provision for permitting the owner of such land to use same for pasture and the growing of certain crops, much like the provision of Thornbury Township's flood plain zoning ordinance.

We should never permit pilferage through the police power. Would we ever permit property to be taken for a police station, without compensation, just because of the great need for police protection in the area? In *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 8 L. Ed. 2d 130 (1962), Mr. Justice CLARK stated:

"If this ordinance is otherwise a valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional. . . .

"This is not to say, however, that governmental action in the form of regulation cannot be so onerous as to constitute a taking which constitutionally requires compensation." 369 U.S. at 592, 594.

In conclusion, I would hold the zoning ordinance constitutional since no party has even suggested other-

wise. I can find no support for the proposition that we can force a citizen to contest the constitutionality of a zoning ordinance so as to protect his constitutional property rights. I can find statutory authority for the eminent domain procedure chosen by the Gaebels in their attempt to prove that Thornbury Township took their property via the flood plain zoning ordinance. Therefore, I would reverse the court below, overrule the Preliminary Objections, and order compliance with the eminent domain statute.

Judge CRUMLISH, JR., joins in this Dissenting Opinion.