## Rubin Gans and Pearl Gans, Appellants *v.* City of Philadelphia, Appellee.

Argued April 4, 1979, before President Judge Bow-man, and Judges CRUMLISH, JR., WILKINSON, JR., ROG-ERS, BLATT, CRAIG and MACPHAIL. Judges MENCER and DiSALLE did not participate.

*Dennis L. Friedman,* with him *Leon W. Silverman,* and *Stein & Silverman,* for appellants.

*Barbara R. Axelrod,* Assistant City Solicitor, with her *James M. Penny, Jr.,* Deputy City Solicitor, and *Sheldon L. Albert,* City Solicitor, for appellee.

OPINION BY JUDGE MACPHAIL, June 29, 1979:

Rubin and Pearl Gans (Appellants) appeal to this Court from an order of the Court of Common Pleas of Philadelphia County sustaining the preliminary objections of the City of Philadelphia (City) to Appellants' petition to appoint a board of view pursuant to Section 502 of the Eminent Domain Code, Act of June 22, 1964,

Special Sess. P.L. 84, *as amended,* 26 P.S. §1-502. Appellants raise five issues for our consideration. All deal with whether the City acted properly in demolishing a building owned by Appellants and whether Appellants' cause of action will lie in eminent domain. The lower court held that Appellants were precluded from pursuing their claim because they failed to exhaust their administrative remedies and because the City's demolition of their property was a proper exercise of its police power and not a taking as required for an eminent domain proceeding. We agree that Appellants failed to exhaust their administrative remedies and, therefore, we affirm.

The City's Department of Licenses and Inspections (Department) was established pursuant to the Philadelphia Home Rule Charter. 351 Pa. Code §3.3-100(f). By the terms of the Charter, the Department

> shall . . . administer and enforce all statutes, ordinances and regulations for the protection of persons and property from hazards, in the use, condition, erection, alteration, maintenance, repair, sanitation . . . , removal and demolition of buildings and structures or any parts thereof.
> . . .

*Id.* at §5.5-1002(a). The Department's enforcement authority includes the duty, upon finding a violation of a statute, regulation, or ordinance which it is bound to enforce, to make an order or to "take such other lawful action as may be necessary to correct the dangerous or unlawful condition. . . ." *Id.* at §5.5-1002(d). Anyone aggrieved by a notice, order, or other action resulting from a City inspection shall be furnished, upon request, with a written statement of the reasons for the action taken and shall be afforded a hearing by the Board of License and Inspection Review (Board). Upon the hearing, the Board shall take evidence, make

findings, and render a written decision. *Id.* at §5.5-1005.

Appellants here were the owners of an unoccupied multi-dwelling building located at 2012-2022 West Susquehanna Avenue, Philadelphia.[1] The building became vacant in November of 1973 and remained unoccupied until the building was demolished in April of 1977. On April 6, 1976, the Department conducted an inspection of the property and found several substantial defects including broken windows, defective interior and exterior walls, and a defective ceiling. Pursuant to Section 7-604 of the Philadelphia Code, the Department declared the property to be a public nuisance.[2] The Department gave formal notice of its findings to Appellants.[3] Attached to the notice of violations was an order which provided in part that:

WITHIN TEN (10) DAYS OF THE DATE OF THIS NOTICE YOU ARE ORDERED TO:

1. Correct the conditions set out in the Violation Notice or demolish; or

2. Notify this department in writing of the steps you intend to correct this condition and your plans for the future use of this building and the time you require to comply with this ORDER; or

---

[1] Subsequent to the institution of this action, the property was sold at sheriff's sale for failure to pay back taxes.

[2] Section 1 of the Act of June 15, 1961, P.L. 445, 53 P.S. §14611, authorizes the City to declare buildings or premises to be nuisances and to take action to abate said nuisances.

[3] Notice was sent to Appellants at 2264 North 5th Street, Philadelphia. A certified mail receipt bearing the signature of Appellant Pearl Gans was introduced at trial as evidence that the notice and order were duly received. Notice also was mailed to Appellants at 2012 West Susquehanna Avenue, Philadelphia, the site of the property here at issue. That notice was returned as undeliverable. Finally, notice was posted on the 2012-2022 West Susquehanna Avenue property.

3. If you are aggrieved by this ORDER and wish to contest its validity you have the right to request a hearing in appeal. Such an appeal must be directed to the Board of Licenses and Inspections Review.

4. You have the right to request a Departmental Hearing prior to filing an appeal with the Board of Licenses and Inspections Review. The request must be submitted in writing within 10 days from the date of this order, and directed to the Department of Licenses and Inspections, Room 780, Municipal Services Building; or you may proceed directly in appeal to the Board of Licenses and Inspections Review, Room 725, City Hall Annex, as set forth above.

*You must comply with the above conditions or it will be assumed that you have chosen to ignore the Order of this department and intend to take no remedial action to correct the violations set forth in the attached violation notice.*

If you fail to do so, the City of Philadelphia, itself or by contract, will demolish the structure on the above premises and collect the costs thereof, which include contractors' charges, all expenses, and overhead incurred by the City of Philadelphia, by filing a lien against the premises or by other appropriate remedy. (Emphasis in original.)

Upon receipt of the notice, Appellant Rubin Gans conducted a visual inspection of the property. He observed that the City had sealed the first floor windows and doors of the property, removed trash which had accumulated around the building, and posted "deposit no rubbish" signs on the property. He also contacted Samuel F. Pepper, an attorney who had represented Appellants in other matters, and asked him what he

should do about the notice and violation. At the hearing held with respect to the City's preliminary objections, Pepper testified that in response to Appellants' request, he telephoned the Department and was informed by an unidentified Department employee that the repairs had been made and that nothing else was required of Appellants. Appellants did not correct any of the conditions cited on the notice of violation. Neither did they notify the Department of any steps they planned to take to correct the condition, request a Department hearing, or file an appeal with the Board.

On January 26, 1977, the Department reinspected Appellants' property and found that none of the earlier violations had been corrected and that the property still constituted a public nuisance. The Department's records concerning the property showed that Appellants had not made any repairs, had not applied for any building permits, and had not communicated with the Department concerning the notice and order. In April, 1977, the City demolished Appellants' property. Shortly after the demolition occurred, Appellants filed their petition for appointment of viewers.

The Philadelphia Home Rule Charter has the status of an act of the General Assembly. *Addison* case, 385 Pa. 48, 57, 122 A.2d 272, 275-76 (1956), *appeal dismissed,* 352 U.S. 956 (1957). The procedures established by the Charter and the ordinances designed to supplement and implement the Charter are subject to the rule of exhaustion of remedies established by §3 of the Statutory Construction Act of 1972, 1 Pa. C.S. §1504. *City of Philadelphia v. Kenny,* 28 Pa. Commonwealth Ct. 531, 546, 369 A.2d 1343, 1351-52, *cert. denied,* 434 U.S. 923 (1977).

> [W]here an act creates a right or liability or imposes a duty and prescribes a particular remedy for its enforcement such remedy is ex-

clusive and must be strictly pursued. . . . This means that one who fails to exhaust his statutory remedies may not thereafter raise an issue which could have and should have been raised in the proceeding afforded by his statutory remedy. (Citations omitted.)

*Philadelphia v. Sam Bobman Department Store Co.*, 189 Pa. Superior Ct. 72, 78, 149 A.2d 518, 521 (1959). *See also Gaebel v. Thornbury Township*, 8 Pa. Commonwealth Ct. 399, 402, 303 A.2d 57, 60 (1973). This rule is particularly applicable to procedures relating to appeals within and from administrative bodies. *Philadelphia v. Sam Bobman Department Store Co.*, 189 Pa. Superior Ct. at 78, 149 A.2d at 521.

In applying the law concerning exhaustion of administrative remedies to the facts of this case, we can conclude only that Appellants failed to exhaust their remedies and that the cause of action before us now, therefore, must be dismissed. The City's Home Rule Charter, 351 Pa. Code §5.5-1005, and the Philadelphia Code, Section 7-606, clearly state that anyone aggrieved by a decision of the Department has a right to appeal that decision to the Board.[4] The notice of violation and order sent to Appellants by the Department explained in detail their right to a hearing be-

---

[4] Of course, had Appellants appealed the Department's order to the Board, either party then could have appealed the Board's decision to the Court of Common Pleas of Philadelphia County and then to this Court. See Section 7 of the Local Agency Law, Act of Dec. 2, 1968, P.L. 1133, 53 P.S. §11307, repealed by Section 2(a) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, 42 P.S. §20002(a)[1429] (JARA) and now found in the Judicial Code at 2 Pa. C.S. §752 and 42 Pa. C.S. §933; and Section 402 of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, *as amended*, 17 P.S. §211.402, repealed by Section 2(a) of JARA, 42 P.S. §20002(a)[1443] and now appearing in the Judicial Code at 42 Pa. C.S. §762(a)(4).

fore the Board and the procedures for enforcing that right. Appellants claim that they were not required to do anything in response to the order because the City, by sealing the windows and doors and ridding the property of refuse, had corrected the violations. Their argument is meritless. The City's actions concerning the property were merely safety precautions taken in an attempt to prevent others from entering on the property and being injured or causing damage to the property. Nothing the City did even remotely resembled the repairs they ordered. Appellants also argue that they fulfilled their obligations under the Order by contacting an unidentified employee in the Department and being informed that the repairs had been made and that no further action was necessary. This argument, too, is without merit. Appellants failed to follow the procedures required for pursuing a grievance with the Department and they had no right to rely on the information they received in a telephone conversation with an unidentified Department employee.

Appellants' property rights were afforded ample protection by the Charter. They were given formal notice of the violations and of the procedure for challenging them. Appellants failed to protect their rights when they had the opportunity to do so. Under such circumstances, Appellants have no standing to contend that there was a de facto taking of their property by the City. It follows that the lower court acted correctly in sustaining the City's preliminary objections to Appellants' petition for the appointment of viewers.

Order affirmed.

### ORDER

AND Now, this 29th day of June, 1979, the order of the Court of Common Pleas of Philadelphia County, Trial Division, at No. 910, May Term, 1977, entered on March 6, 1978 is affirmed.