**Martin v. Kelleher**

C.P. of Berks County, no. 04-18194.

*J. Jackson Eaton III* and *Andrew H. Ralston Jr.,* for plaintiffs.
*Charles D. Younger,* for defendants.

LASH, *J.,* May 4, 2005.The matters before this court are the preliminary objections of defendants, Linda A. Kelleher, in her capacity as city clerk of the City of Reading, Pennsylvania, and City of Reading, Pennsylvania (defendants), to the complaint of plaintiffs, Cherlynn M. Martin and Tina Fuhrman, individually and in their capacity as members of the petitioners' committee for referendum on City of Reading Ordinance no. 43-2004 (plaintiffs), seeking a writ of mandamus, and plaintiffs'

motion for peremptory judgment. Argument was held on April 18, 2005. For reasons set forth herein, this court overrules the preliminary objections and denies the motion for peremptory judgment.

Plaintiffs' mandamus action seeks an order from this court commanding defendant, Linda A. Kelleher, in her capacity as the city clerk of defendant, City of Reading, Pennsylvania (defendant City Clerk), to accept a referendum affidavit and petition prepared by plaintiffs, which defendant City Clerk had previously refused. Defendants object, alleging plaintiffs failed to exhaust their administrative remedies prior to filing this action and that this action was not filed on a timely basis.

Plaintiffs established a committee and commenced referendum proceedings to oppose City of Reading Ordinance no. 2004-43, which was adopted by Reading City Council on October 11, 2004, and executed by the mayor of Reading on October 13, 2004. According to plaintiffs' complaint, ordinance no. 2004-43 requires presettlement home inspections of all residential properties sold or transferred in the City of Reading and sets the fees for those inspections.

Plaintiffs' committee attempted to initiate the referendum proceedings pursuant to the Home Rule Charter for the City of Reading, article XI, sections 1102 through 1109. Section 1102 of the city charter provides, in pertinent part:

"(b) Referendum. The qualified voters of the city shall have the power to require reconsideration by the council of any adopted ordinance. If the council fails to repeal an ordinance so reconsidered, the referendum process

may be commenced giving the qualified voters of the city the opportunity to approve or reject said ordinance at a city election."

Section 1103(a) of the city charter provides the procedure for commencing referendum proceedings, stating, in pertinent part:

"(a) Any five qualified voters of the city may commence . . . referendum proceedings by filing with the city clerk an affidavit stating they will constitute the petitioners' committee and be responsible for circulating the petition and filing it in proper form, stating their names and addresses and specifying the address to which all notices to the committee are to be sent, and setting out in full the proposed initiative ordinance or citing the ordinance sought to be reconsidered. In case of referendum, such an affidavit must be filed within 10 days of the adoption of the ordinance. Within five days after the affidavit of the petitioners' committee is filed and validated, the city clerk shall issue the appropriate petition blanks to the petitioners."

On October 20, 2004, the plaintiffs' committee filed with defendant City Clerk an affidavit, which they argue complied with the terms of section 1103(a).

On October 26, 2004, plaintiffs' committee received a certified letter dated October 25, 2004, from defendant City Clerk stating, among other things, that the submitted affidavit was invalid for being in noncompliance with section 1103(a). The letter set forth that the "wording and content of the affidavit . . . did not identify the undersigned as 'qualified voters.'" The correspondence cited section 1103(a) as authority for requiring the affi-

davit to be signed by five qualified voters of the City of Reading. As a result, the defendant City Clerk determined that the affidavit would not be validated.

Had the affidavit been validated, section 1103 requires the city clerk to issue "appropriate petition blanks to the petitioners." However, pursuant to her determination of October 25, 2004, the city clerk declined to issue the petition blanks. Consequently, plaintiffs' committee's next action was to create a "referendum petition form." According to plaintiffs' complaint, the committee circulated 148 petition forms and obtained 4,871 signatures.

On November 19, 2004, plaintiffs' committee presented the signed referendum petition to defendant City Clerk for filing. Defendant City Clerk refused to accept the referendum petition. Plaintiffs' committee then attempted to present the referendum petition directly to Reading City Council at a public meeting held on November 22, 2004. By a vote of four to three, Reading City Council refused to accept the referendum petition.

On December 20, 2004, plaintiffs filed the within mandamus action. Defendants responded on January 18, 2005, by filing preliminary objections, alleging two bases for dismissing the complaint. First, defendants claim that plaintiffs failed to exercise or exhaust their statutory remedies. Specifically, defendants argue that plaintiffs had no right to petition this court prior to exhausting administrative remedies available to them under sections 1101-1109 and sections 1111-1112 of the city charter, or by first referring the matter to the Charter Board as permitted by City Charter Amendment I, § 2. Secondly, defendants allege that this court lacks jurisdiction because

plaintiffs failed to file the complaint within 30 days from the October 25, 2004 determination, and therefore the within action constitutes an untimely appeal.

Plaintiffs counter by arguing that the administrative remedies proposed by defendants are insufficient to provide the requested relief. Further, they argue that the filing of the complaint was timely, as the complaint seeks relief in mandamus and is not an "appeal from an adverse adjudication by a local agency." As such, the within action is governed by a six-month Statute of Limitations, as set forth in 42 Pa.C.S. §5522(b)(1).

The doctrine of exhaustion of administrative remedies applies to home charters, as well as legislation. As stated in the case of *Gans v. City of Philadelphia,* 43 Pa. Commw. 635, 640-41, 403 A.2d 168, 170 (1979):

"[A] [c]harter has the status of an act of the General Assembly. *Addision Case,* 385 Pa. 48, 57, 122 A.2d 272, 275-76 (1956), *appeal dismissed,* 352 U.S. 956, [77 S.Ct. 353, 1 L.Ed.2d 316] (1957). The procedures established by the charter and the ordinances designed to supplement and implement the charter are subject to the rule of exhaustion of remedies established by section 3 of the Statutory Construction Act of 1972, 1 Pa.C.S. §1504. *City of Philadelphia v. Kenny,* 28 Pa. Commw. 531, 546, 369 A.2d 1343, 1351-52 (1977), *cert. denied,* 434 U.S. 923, 98 S.Ct. 401, 54 L.Ed.2d 281 (1977).

" '(W)here an act creates a right or liability or imposes a duty and prescribes a particular remedy for its enforcement such remedy is exclusive and must be strictly pursued. . . . This means that one who fails to exhaust his statutory remedies may not thereafter raise an issue which

could have and should have been raised in the proceeding afforded by his statutory remedy.' (citations omitted)

"*Philadelphia v. Sam Bobman Department Store Co.,* 189 Pa. Super. 72, 78, 149 A.2d 518, 521 (1959). See also, *Gaebel v. Thornbury Township,* 8 Pa. Commw. 399, 402, 303 A.2d 57, 60 (1973). This rule is particularly applicable to procedures relating to appeals within and from administrative bodies. *Philadelphia v. Sam Bobman Department Store Co.,* 189 Pa. Super. at 78, 149 A.2d at 521."

The doctrine of exhaustion of administrative remedies, however, does not apply when the remedy does not allow for adjudication of the issues raised. *Village Charter School v. Chester Upland School District,* 813 A.2d 20 (Pa. Commw. 2002).

Section 1105 of the city charter sets forth generally the method for disposition of referendum disputes, including providing allowance for judicial review. Under section 1105, if a petitioners' committee is dissatisfied with the determination of a city clerk on the sufficiency of a petition, it can seek redress from city council or through an amendment of the petition. If city council renders an adverse decision, section 1105 expressly permits the petitioners' committee to seek judicial review. Further, the committee may opt to bypass a determination by city council and proceed directly to the court, also expressly permitted by section 1105.

Unfortunately, section 1105 is limited to providing procedures for review of a city clerk's determination on a petition, and does not address how to proceed if the

city clerk rejects an affidavit. Arguably, if under the terms of the city charter, defendant City Clerk had a mandatory duty to accept the affidavit and issue blank petitions, her failure to do so could be construed as an action on the "sufficiency of a petition," and therefore governed by section 1105. See *Municipality of Mt. Lebanon v. Erskine,* 85 Pa. Commw. 490, 482 A.2d 1195 (1984). Here, however, section 1103(a) provides defendant City Clerk with limited authority to review the affidavit for "validation" purposes. The precise issue, therefore, is whether defendant City Clerk improperly refused to accept the affidavit, an issue which section 1105 was not designed to address. Thus, contrary to defendants' assertions, sections 1101-1109 of the city charter does not allow for adjudication of the issue raised.[1]

Defendants also claim that plaintiffs could have pursued their remedy through section 1111 or section 1112 of the city charter. We disagree.

Section 1111 authorizes qualified voters of the City of Reading, through filing of a petition, to enter an agenda

---

1. Argument could also be made that plaintiffs' bypass of defendant City Clerk in preparing and circulating a referendum petition they created, then presenting the petition to city council, which petition was refused on November 22, 2004, triggered section 1105 administrative relief. In this scenario, the proper method would have been to appeal from the refusal by city council within 30 days, rather than filing a mandamus action. No harm occurred though, for the filing date of the mandamus action complied with the 30-day time limit for appeals to this court from the decision of city council. *Albrechta v. Borough of Shickshinny,* 129 Pa. Commw. 206, 565 A.2d 198 (1989), *appeal denied,* 525 Pa. 620, 577 A.2d 891 (1990). 42 Pa.C.S. §708(c) expressly states that the commencing of a mandamus action, in lieu of an appeal from the determination of the government unit, is alone not a ground for dismissal.

item on the regular agenda of city council. Section 1112 authorizes qualified voters of the City of Reading, upon filing a petition, to require city council to hold a special meeting.

In contrast to section 1105, neither section 1111 nor section 1112 provide a mode for administrative relief, nor a final determination which would be ripe for judicial review. Review of this issue is a matter of right.[2] Sections 1111 and 1112 require 35 signatures and 200 signatures, respectively, to gain audience before city council. A requirement that additional signatures be obtained before review is permitted imposes an inappropriate threshold on plaintiffs. Clearly, section 1111 and section 1112 were not designed for review of referendum proceedings.

Finally, defendants argue that plaintiffs could have submitted the issue to the Charter Board established by amendment I to the city charter. Amendment I, section 2, provides for the creation of a "Charter Board." This board is given jurisdiction to "hear and decide all cases alleging violations of the charter or administrative code" and to "issue binding opinions, impose penalties and administrative fines, refer cases for prosecution and conduct investigations on its own initiative and on referral or complaint."

---

2. Plaintiffs' committee has a beneficial interest in requiring the city's performance of its duties under the charter and is, therefore, entitled to judicial review of defendant City Clerk's refusal of the affidavit. See *Municipality of Mt. Lebanon v. Erskine,* 85 Pa. Commw. 490, 493-94, 482 A.2d 1195, 1197 (1984).

However, as pointed out by plaintiffs, the issue of whether the charter board is an appropriate tribunal for administrative review is moot because the charter board, though created, is not currently able to function in the manner set forth in amendment I, section 2.

Amendment I, section 2(c), required city council to adopt by ordinance regulations by which the charter was to operate, stating: "within 12 months of the effective date of this amendment, city council shall, by ordinance, adopt regulations implementing this section. Such ordinance shall provide penalties and other enforcement mechanisms, as well as procedures by which the Charter Board shall operate in accordance with local agency and other applicable law."

These regulations have not been adopted. The board is without mechanisms to hear and decide disputes, such as the issue at bar. Therefore, even assuming the board would have the authority to adjudicate referendum disputes, plaintiffs cannot be penalized for failing to seek relief from a board incapable of practical function.

General rules of statutory construction are applicable in interpreting the provisions of a home rule charter. Under these rules, the court is to construe a section of the charter with reference to the entire charter and not apart from its context. *Cottone v. Kulis,* 74 Pa. Commw. 522, 526, 460 A.2d 880, 882 (1983), citing *Insurance Department v. Adrid,* 24 Pa. Commw. 270, 275, 355 A.2d 597, 599 (1976).

It is apparent from review of the home rule charter that the drafters intended review of referendum proceedings to be handled through section 1105. As stated, how-

ever, section 1105 does not provide an avenue for review of the issue at bar. We find, therefore, that the administrative remedies provided for by the city charter are inadequate. The doctrine of exhaustion of administrative remedies does not apply.

The next question is whether plaintiffs can maintain a mandamus action. The remedy of mandamus is available to compel "performance of the ministerial, mandatory duty of a public official where there is clear legal right to performance and there is no adequate legal remedy." *Borger v. Pleasant Valley School District,* 122 Pa. Commw. 187, 189, 551 A.2d 648, 649 (1988). The purpose of mandamus is not to establish legal rights but to enforce those rights which are already established. *Waters v. Commonwealth, Department of Corrections,* 97 Pa. Commw. 283, 287-88, 509 A.2d 430, 432 (1986).

Mandamus is an appropriate remedy here. If, as plaintiffs urge, the proposed affidavit complied with section 1103(a), then defendant City Clerk had a mandatory duty to issue the blank petitions. As plaintiffs have no other remedy to compel performance of this duty, they may seek the issuance of a writ of mandamus.

Based on this ruling, this court also finds that the filing of the complaint in mandamus was timely. As already stated, an action in mandamus is subject to a six-month statute of limitations, pursuant to 42 Pa.C.S. §5522(b)(1), not the 30-day limitation required by 2 Pa.C.S. §752, relating to an appeal from adjudication of a local agency. Accordingly, defendants' preliminary objections are overruled.

We turn then to plaintiffs' demand for peremptory judgment. A peremptory judgment in a mandamus action is appropriately entered only where there exists no genuine issue of fact, and where the case is free and clear from doubt. *Forward Township Sanitary Sewage Authority v. Township of Forward,* 654 A.2d 170 (Pa. Commw. 1995).

We note, preliminarily, that there are no material issues of fact. Defendants do not dispute that the five committee members presenting the questioned affidavit were, in fact, qualified voters of the City of Reading. Defendants' argument is simply that the affidavit was defective because it did not expressly declare that the members of the committee were "qualified voters of the city."

Plaintiffs counter by arguing that section 1103(a) does not require that the affidavit contain such a declaration. Section 1103 does provide that the members of the committee *be* qualified voters, and that the affidavit *set forth* the names and addresses, specifying the address to which all notices to the committee are to be sent.

However, section 1103(a) does not require a written declaration that the members are qualified voters. Plaintiffs argue that since the charter does not require such a declaration, defendant City Clerk cannot refuse the affidavit on this basis.

It appears that while the proposed affidavit is technically sufficient under the terms of section 1103(a), the inquiry does not stop there. The sufficiency of the affidavit must also be considered within the context of the Pennsylvania Election Code, 25 P.S. §2601 et seq. In the *Harrisburg Sunday Movie Petition Case,* 352 Pa. 635,

44 A.2d 46 (1945), the Supreme Court held that affidavits supporting initiative petitions must comply with sections 2868 and 2869 of the Election Code,[3] notwithstanding that these sections govern nomination petitions only. The Supreme Court stated: "all the safeguards the law has placed around nomination petitions in order to insure their genuineness, have also been placed around the petitions to be filed for the purpose of causing to be submitted to the electorate in any municipality the [initiative] question." 352 Pa. at 639, 44 A.2d at 48. In *Petition of Werner,* 662 A.2d 35 (Pa. Commw. 1995), a matter involving a referendum protesting the passage of an ordinance by Borough Council of Phoenixville, the Commonwealth Court, citing the *Harrisburg Sunday Movie Petition Case* as authority, and noting that the section of the borough code did not contain an affidavit requirement, nevertheless, held that the Election Code's affidavit requirement is applicable. 662 A.2d at 38.

Further, the requirements of the Election Code are material, not merely technical. As stated by our Supreme Court in the *Harrisburg Sunday Movie Petition Case*:

"The filing of petitions with agencies of government, which petitions are to be the basis of official actions by those agencies, *without appropriate verifications* of such petitions by some person who is qualified to certify under oath to the genuineness of those petitions to the best of the affiant's information and belief, would be an anomaly in the administration of our government, and we cannot believe that the legislature intended to either

---

3. 25 P.S. §§2868, 2869.

authorize or tolerate such an anomaly in the petitions it provided for as the basis of holding a municipal election on the question of [the initiative]." 352 Pa. at 639, 44 A.2d at 47.

Further, our Supreme Court in the case of *In re Petition of Cianfrani,* 467 Pa. 491, 494, 359 A.2d 383, 384 (1976), held:

"[T]he provisions of the election laws relating to the form of nominating petitions and the accompanying affidavits are not mere technicalities but are necessary measures to prevent fraud and to preserve the integrity of the election process. See *e.g., Catherine Township Liquor Referendum Case,* 382 Pa. 291, 293, 114 A.2d 145, 146 (1955); *Harrisburg Sunday Movie Petition Case,* 352 Pa. 635, 638, 44 A.2d 46, 47 (1945). The requirements of sworn affidavits are to insure the legitimacy of information crucial to the election process. Thus, the policy of the liberal reading of the Election Code cannot be distorted to emasculate those requirements necessary to assure the probity of the process."

Sections 2868 and 2869, deemed applicable to initiative and referendum proceedings by the Supreme Court in the *Harrisburg Sunday Movie Petition Case,* require a declaration by a signatory that he or she is a qualified elector. Section 2868 requires the signer of a nomination petition to declare that he is a "qualified elector at the county therein named." Section 2869 requires the circulator's affidavit set forth that he or she is a "qualified elector duly registered and enrolled as a member of the designated party of the state, or of the political district, as the case may be, referred to in said petition."

While the 1103(a) affidavit questioned in this case does not support a petition, but in fact precedes it and is merely the basis for initiating the referendum proceeding, nevertheless, the same safeguards should apply. Section 1103(a) sets forth that the function of the city clerk is to receive and validate the affidavit, then issue the appropriate petition blanks to the petitioners. The validation process is merely a cursory review by the city clerk to determine whether the affidavit, on its face, is sufficient under section 1103(a). To determine this sufficiency, the city clerk must accept that the members of the petitioners' committee are qualified voters. This cannot be done if the members do not so declare by affidavit. It is not feasible, nor required, for the city clerk to conduct an independent investigation to determine whether the committee members are, in fact, qualified voters. She is merely to accept or reject the affidavit on the basis of the statements contained within it. If there is a factual dispute on whether a member is a qualified voter, that can be determined at a later time after petitions are filed, under section 1105.

This court holds that an affidavit submitted in accordance with section 1103(a) must contain a declaration that the signing members of the petitioners' committee are qualified voters of the City of Reading. Plaintiffs' motion for peremptory judgment must be denied.

Accordingly, we enter the following order:

ORDER

And now, May 4, 2005, upon consideration of the preliminary objections of defendants, Linda A. Kelleher, in

her capacity as City Clerk of the City of Reading, Pennsylvania, and City of Reading, Pennsylvania, to plaintiffs' complaint, response thereto, briefs filed by the parties and after argument held, the preliminary objections are overruled.

Upon consideration of the motion of plaintiffs for peremptory judgment, response thereto, briefs filed by the parties and after argument held, the motion for peremptory judgment is hereby denied.